## STATE OF CONNECTICUT *v.* LEON SANDERS
## (AC 24032)

Lavery, C. J., and Schaller and DiPentima, Js.

Argued October 18, 2004—officially released January 4, 2005

*Sarah F. Summons*, special public defender, for the appellant (defendant).

*Proloy K. Das*, deputy assistant state's attorney, with whom, on the brief, were *Mary M. Galvin*, state's attorney, and *John F. Kerwin III*, assistant state's attorney, for the appellee (state).

### Opinion

DiPENTIMA, J. After a jury trial, the defendant, Leon Sanders, was convicted of two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (5). Thereafter, he was convicted, after a trial to the court, of being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a)

(1) (A). In his appeal from the judgment of the trial court, the defendant raises three claims. He contends that the court improperly (1) admitted evidence of prior misconduct, (2) restricted cross-examination of the victim and (3) disallowed a witness' testimony as to the victim's prior inconsistent statement. We affirm the judgment of the trial court.

On May 23, 2001, in Ansonia, the victim, Kente Douglas, was shot multiple times in the back. At the time of the shooting, Douglas was reaching through the back door of a parked automobile to remove a child's car seat. Jackie Garcia, Douglas' girlfriend, was standing near the automobile with the couple's four year old daughter in her arms. An automobile drew up beside Douglas, and the defendant fired a gun at Douglas through the passenger side window. Douglas fell to the ground, and the defendant continued to fire gunshots at him until the automobile left the area. During the shooting, Garcia went inside with her child. After the defendant left, she returned to the street with a cordless telephone. She dialed 911, reported to the operator that her boyfriend had been shot and named the defendant as the shooter. When the police arrived, an officer spoke with Garcia, who told him that the defendant had pulled up in a car and shot Douglas five or six times. A police detective spoke with Douglas, who also stated that the defendant had shot him. Later, as Douglas was transported in an ambulance to a hospital, he told another police officer that the defendant had shot him. In June, 2001, the defendant was arrested and charged. Following the jury trial, at which he was convicted of two counts of assault, the defendant was tried to the court on the part B information in which he was accused of being a persistent dangerous felony offender and was convicted on that charge as well. Thereafter, the court imposed a sentence of forty years imprisonment. This appeal followed.

I

The defendant first claims that in admitting evidence of prior uncharged misconduct, the court improperly determined that the evidence was more probative than prejudicial. We disagree.

Douglas testified at trial that in February, 2001, several months prior to the shooting incident, he and the defendant had encountered one another at the exit to the Stop and Shop supermarket in Ansonia. Douglas testified that the defendant had his hand in his pocket as he walked toward him, which made Douglas suspect that he was carrying a gun. While attempting to avoid the defendant, Douglas fell over a shopping carriage, and the defendant kicked and punched him. After that testimony, the state played a store videotape, which had been admitted into evidence, that showed the defendant chasing Douglas. Prior to trial, the court had denied the defendant's motion in limine requesting preclusion of that evidence on the ground that any probative value of such evidence was outweighed by its prejudicial effect.[1] During trial, the defendant objected to the videotape as cumulative of other evidence.

As with other evidentiary rulings, we review the court's conclusion as to the relevance of prior misconduct evidence under the abuse of discretion standard. See *State* v. *Romero*, 269 Conn. 481, 501, 849 A.2d 760 (2004). When an evidentiary ruling on appeal pertains to prior misconduct, well established and recent law guides our review. "We previously have observed that, [a]s a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . We have recognized exceptions to this general rule, however. Evidence of prior misconduct may be admissible . . . for other pur-

---

[1] The state previously had filed a notice of intent to offer evidence of the February, 2001 uncharged misconduct.

poses, such as to prove knowledge, intent, motive, and common scheme or design . . . . Accordingly, we have established a two-pronged test for determining the admissibility of prior misconduct evidence. Such evidence is admissible if: (1) it is relevant and material to at least one of the circumstances encompassed by the exceptions; and (2) its probative value outweighs its prejudicial effect." (Citations omitted; internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 390, 844 A.2d 810 (2004). The defendant raises only the second prong as an issue on appeal. Specifically, he argues that the court failed to weigh the probative value of the misconduct evidence properly against its prejudicial effect, and that the admission of the evidence caused the jury to consider only the misconduct evidence in determining his guilt of the crimes charged.

To the extent that the defendant claims that the court failed to perform any balancing test at all, the record before us does not support that claim. The defendant notes that the court did not articulate that it undertook a balancing test and cites *State* v. *Sierra*, 213 Conn. 422, 436, 568 A.2d 448 (1990), for the proposition that this failure constitutes an abuse of discretion. The record reveals, however, that when the motion was argued prior to trial, that test was explicitly referred to by counsel and the court. "We do not read *Sierra* or [*State* v. *Baldwin*, 224 Conn. 347, 618 A.2d 513 (1993)] as requiring a trial court to use some talismanic phraseology in order to satisfy this balancing process. Rather, these cases simply stand for the proposition that, in order for this test to be satisfied, a reviewing court must be able to infer from the entire record that the trial court considered the prejudicial effect of the evidence against its probative nature before making a ruling." *State* v. *Nunes*, 260 Conn. 649, 689–90, 800 A.2d 1160 (2002).

The record does support a finding that both prongs of the test have been satisfied. The misconduct evidence was probative of the identity of the defendant in that it showed assaultive behavior by the defendant toward the same victim. See *State* v. *Camera*, 81 Conn. App. 175, 185, 839 A.2d 613, cert. denied, 268 Conn. 910, 845 A.2d 412 (2004). This probative value was not out-weighed by the prejudicial effect. The incident at the Stop and Shop was significantly less violent than the incident for which the defendant was being tried. See *State* v. *Hoskie*, 74 Conn. App. 663, 668, 813 A.2d 136, cert. denied, 263 Conn. 904, 819 A.2d 837 (2003). The misconduct evidence was not overly inflammatory. It did not consume a significant portion of the trial. The defendant had considerable advance notice of the state's intent to produce such evidence, and the evidence did not distract the jury from the main issues of the trial. See *State* v. *Harvey*, 77 Conn. App. 225, 233, 822 A.2d 360, cert. denied, 265 Conn. 906, 831 A.2d 252 (2003). Finally, the court provided the necessary guidance to the jury in considering the evidence. Immediately prior to the admission of the misconduct evidence and, at the state's request, the court issued limiting instructions to the jury. Those instructions cautioned the jury to consider the evidence for the purpose of identity only. Furthermore, during the final charge to the jury, the court again instructed the jury to consider the misconduct evidence only as to proof of identity. We therefore conclude that the court did not abuse its discretion in admitting the evidence of prior misconduct.

II

The defendant next claims that the court improperly limited his cross-examination of Douglas by precluding evidence of Douglas' narcotics trafficking and prior misconduct. That issue is not properly before us and, therefore, we do not afford it review.

Prior to trial, the state filed motions in limine to restrict the cross-examination of Douglas. On November 5, 2002, the court granted the motions, precluding any reference to prior convictions or pending criminal charges and prohibiting any reference to Douglas' involvement in drug trafficking and gang related activity. On November 19, 2002, the first day of evidence, the defendant filed a motion for reconsideration and articulation. The court granted the motion and ruled: "There has been a request to the court to cross-examine the victim regarding his prior felony convictions. Of course, that is not cross-examination for impeachment purposes and as those convictions relate to lack of veracity, those can be named, felony convictions as they relate to issues of truth and veracity. Other than that, they are to be unnamed felonies. And in no instance are the specific factual or the factual basis supporting any conviction to be brought forth in terms of cross-examination. In regard to pending charges, those pending charges, at least now the question is whether they can be named, pending charges pursuant to your request [under *Giglio* v. *United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972)], as they affect a motive of bias in testifying, that is proper inquiry to the victim's testimony so the jury can determine—jurors are the triers of the fact, any witness' credibility. Here it is the victim." Later the court stated that the pending charges that implicated motive, bias or interest could be named.

During Douglas' direct examination, the prosecutor inquired about prior felonies and pending charges. On cross-examination, defense counsel asked Douglas a number of questions regarding his pending narcotics cases, both state and federal, as well as past felony convictions.

"[P]roof of aggrievement is . . . an essential prerequisite to the court's jurisdiction of the subject matter

of the appeal. . . . Ordinarily, a party that prevails in the trial court is not aggrieved." (Citations omitted; internal quotation marks omitted.) *Seymour* v. *Seymour*, 262 Conn. 107, 110, 809 A.2d 1114 (2002). "Moreover, [a] party cannot be aggrieved by a decision that grants the very relief sought." (Internal quotation marks omitted.) Id., 111. Such is the case here. Because the court granted the defendant's motion for reconsideration, he is not aggrieved on this issue. The defendant was not limited in his cross-examination of Douglas as to pending and past charges against him. Moreover, the record discloses no other proposed line of inquiry. Accordingly, we do not review the defendant's claim.

### III

The defendant's final claim is that the court improperly denied his motion for a new trial. Specifically, the defendant argues that the preclusion of a certain portion of Douglas' medical records was improper because the evidence allegedly included a prior inconsistent statement by Douglas as to his assailant's identity. We disagree.

After the trial was concluded, the defendant filed a motion for a new trial pursuant to Practice Book § 42-53 (a), which provides in relevant part: "Upon motion of the defendant, the judicial authority may grant a new trial if it is required in the interests of justice . . . (1) For an error by reason of which the defendant is constitutionally entitled to a new trial; or (2) For any other error which the defendant can establish was materially injurious to him or her. . . ." After a hearing, noting that the defendant had filed the motion under Practice Book § 42-53 (a) (1), the court denied the motion.

During trial, the defendant attempted to call as a witness Brenda Reig, a discharge nurse at Yale-New Haven Hospital, who had assisted in developing a discharge plan for Douglas. The state objected to her testi-

mony, and the defendant made an offer of proof. Reig testified that she had no recollection of speaking with Douglas, but that her notes, which were marked for identification, contained the statement, "Patient is very concerned regarding his safety not knowing his assailant." She also testified that she did not recall who made that statement and that it could have been made by someone other than Douglas. The defendant argued that the testimony was admissible under the business record exception to the hearsay rule, the exception as to identification under § 8-5 (2) of the Connecticut Code of Evidence,[2] the prior recollection recorded exception and the residual hearsay exception. The court precluded the testimony on the ground that it lacked the necessary foundation for admission because Douglas had not been confronted with the statement.

On appeal, the defendant argues that the court improperly precluded that statement as being a prior inconsistent statement, essentially claiming that the requisite foundation should have been excused in the interest of justice and fairness.[3] We are not convinced.

In reviewing the defendant's claim, in both the context of the motion for a new trial and the evidentiary proffer, we examine the court's rulings for abuse of discretion. "The proper appellate standard of review when considering the action of a trial court granting

[2] Connecticut Code of Evidence § 8-5, entitled Hearsay Exceptions: Declarant Must Be Available, provides in relevant part: "The following are not excluded by the hearsay rule, provided the declarant is available for cross-examination at trial . . . (2) Identification of a person. The identification of a person made by a declarant prior to trial where the identification is reliable."

[3] Although not explicitly set forth in his argument, the defendant also suggests that the statement should have been admitted under the business record exception to the hearsay rule. Although the discharge plan containing the statement may be a business record, the statement itself is another layer of hearsay and must fall within another exception in order to be admissible. See *Pagano* v. *Ippoliti*, 245 Conn. 640, 651, 716 A.2d 848 (1998).

or denying a motion to set aside a verdict and a motion for a new trial is the abuse of discretion standard." *State* v. *Ward*, 76 Conn. App. 779, 786, 821 A.2d 822, cert. denied, 264 Conn. 918, 826 A.2d 1160 (2003). "[T]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 252, 856 A.2d 917 (2004).

We recently addressed the issue of a prior inconsistent statement in *State* v. *Daniels*, 83 Conn. App. 210, 848 A.2d 1235, cert. denied, 270 Conn. 913, 853 A.2d 528 (2004), in a similar context. In that case, we stated that there was "nothing in the record before us to indicate that the victim ever admitted making the statement. We therefore believe that the second sentence of § 6-10 (c) of the Connecticut Code of Evidence applies. It provides: If a prior inconsistent statement made by a witness is not shown to or if the contents of the statement are not disclosed to the witness at the time the witness testifies, extrinsic evidence of the statement is inadmissible, except in the discretion of the court. Extrinsic evidence comes from someone other than the person whose statement is being challenged by the evidence. Proof that a witness has made a prior inconsistent statement, by extrinsic evidence . . . is not generally permissible unless the witness has first been asked about the statement . . . . In *State* v. *Saia*, 172 Conn. 37, 46, 372 A.2d 144 (1976), our Supreme Court held that we have no inflexible rule regarding the necessity of calling the attention of a witness to his prior inconsistent statement before offering extrinsic evidence about it. Rather, [t]he trial court is vested with a liberal discretion as to how the inquiry should be conducted in any given case." (Citation omitted; internal quotation marks omitted.) *State* v. *Daniels*, supra, 215.

The reasoning of *Daniels* applies here. The court did not abuse its liberal discretion in precluding the statement because the necessary foundation was lacking. The defendant never confronted Douglas with the statement, and the defendant offered no explanation as to why that was not done.

The judgment is affirmed.

In this opinion the other judges concurred.