******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LEON SANDERS *v.* COMMISSIONER
OF CORRECTION
(AC 37512)

DiPentima, C. J., and Sheldon and Schaller, Js.

*Argued September 8—officially released December 20, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Fuger, J.)

*Deborah G. Stevenson*, assigned counsel, for the
appellant (petitioner).

*Kathryn W. Bare*, assistant state's attorney, with
whom, on the brief, were *Mary M. Galvin*, former state's
attorney, and *Courtney M. Chaplin*, deputy assistant
state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The petitioner, Leon Sanders, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his third postconviction petition for a writ of habeas corpus challenging his conviction on charges of assault in the first degree and being a persistent dangerous felony offender. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying his petition for certification to appeal and (2) improperly denied his petition for a writ of habeas corpus in which he claimed that counsel in both his underlying criminal prosecution and his first postconviction habeas corpus proceeding rendered ineffective assistance. Because the petitioner did not demonstrate that the habeas court abused its discretion in denying the petition for certification to appeal, we dismiss the appeal.

The following facts and procedural history are relevant to our decision. The petitioner was charged with two counts of assault in the first degree and with being a persistent dangerous felony offender. These charges stemmed from an incident in Ansonia on May 23, 2001, in which Kente Douglas was shot multiple times in the back. "At the time of the shooting, Douglas was reaching through the back door of a parked automobile to remove a child's car seat. Jackie Garcia, Douglas' girlfriend, was standing near the automobile with the couple's four year old daughter in her arms. An automobile drew up beside Douglas, and the [petitioner] fired a gun at Douglas through the passenger side window. Douglas fell to the ground, and the [petitioner] continued to fire gunshots at him until the automobile left the area. During the shooting, Garcia went inside with her child. After the [petitioner] left, she returned to the street with a cordless telephone. She dialed 911, reported to the operator that her boyfriend had been shot and named the [petitioner] as the shooter. When the police arrived, an officer spoke with Garcia, who told him that the [petitioner] had pulled up in a car and shot Douglas five or six times. A police detective spoke with Douglas, who also stated that the [petitioner] had shot him. Later, as Douglas was transported in an ambulance to a hospital, he told another police officer that the [petitioner] had shot him. In June, 2001, the [petitioner] was arrested and charged. Following the jury trial, at which he was convicted of two counts of assault, the [petitioner] was tried to the court on the part B information in which he was accused of being a persistent dangerous felony offender and was convicted on that charge as well. Thereafter, the court imposed a sentence of forty years imprisonment." *State* v. *Sanders*, 86 Conn. App. 757, 759, 862 A.2d 857 (2005). On the petitioner's appeal from his conviction, this court affirmed the trial court's judgment. Id.

Following his conviction, the petitioner brought several petitions for writs of habeas corpus. At issue in the present appeal is the petitioner's third such petition, which was filed on December 12, 2012, and amended for a fourth time on September 25, 2014 (operative petition).[1] The petitioner set forth three separate claims. In count one, the petitioner alleged that his first habeas counsel, Sebastian DeSantis, "was ineffective in failing to allege in the prior habeas petition a claim of ineffective assistance of [his criminal defense counsel, Robert Berke] for his failure to properly advise him of the state's offer of eight years incarceration on a guilty plea, and had he been properly advised, he would not have rejected it." In count two, the petitioner alleged that his state and federal rights to due process of law were violated because Berke had not properly advised him whether to accept or reject the state's pretrial offer of eight years incarceration on a guilty plea. In count three, the petitioner alleged actual innocence, but he withdrew that claim prior to trial.

At the trial on December 2, 2014, the petitioner presented evidence describing the state's plea offer. Specifically, the petitioner submitted the transcript from the first habeas trial, which was held on October 2, 2008, when he had testified that the state's plea offer was for eight years with the right to argue for less. The petitioner repeated this testimony at the proceeding on December 2, 2014. Berke, however, testified that there was a plea offer extended by the state, but he could not remember the exact terms of the plea offer. Berke further testified that he did not recall the alleged plea offer of eight years imprisonment. In terms of how he advised the petitioner regarding the state's plea offer, Berke testified that although he could not recall any specific discussion with the petitioner, he typically presents his clients with "the positive [and] the negatives of going to trial—the risks of trial [and] the maximum exposure. [He does not] present [his] opinion on whether they should take an offer or not. . . . [T]hat was their decision and not [his]."

Following the trial, the court, *Fuger, J.*, denied the operative petition in an oral decision in which it concluded that Berke and DeSantis had provided the petitioner with effective assistance of counsel.[2] With respect to the first count, the court determined that it could not "find any deficient performance by [DeSantis] in his representation of [the petitioner] at the first habeas trial" and, therefore, it denied the first count of the petition. In rejecting the claim that DeSantis rendered ineffective assistance for failing to allege in the first habeas action a claim that Berke's performance was ineffective for inadequately advising the petitioner regarding the state's plea offer, the court made several findings. It expressly credited the testimony of DeSantis that the petitioner did not raise any concerns to him

regarding Berke's representation in connection with the plea offer, and that the petitioner made it clear to DeSantis that he wanted to go to trial to prove his innocence. The court also specifically found, in accordance with DeSantis' testimony, that in order to determine which issues to raise in the habeas petition, he reviewed Berke's file, examined the criminal trial transcripts and files, conversed with the petitioner, hired an investigator, reviewed the relevant police reports and reviewed the petition with the petitioner before he filed it. In drafting the habeas petition, DeSantis testified that he tried to be overinclusive in order to preserve issues for future litigation, and his typical practice was to include a claim in the petition if the petitioner was adamant about including it, unless it was frivolous. In addition, DeSantis agreed with counsel for the respondent, the Commissioner of Correction, that the first habeas court, *Nazzaro*, *J.*, "found that it was clear that the petitioner wanted to go to trial and to prove his innocence rather than take a plea offer . . . ."

As to the petitioner's second count, the court determined that Berke's performance in the petitioner's underlying criminal proceedings was not deficient. With respect to this conclusion, the court explained that the petitioner "rejected a plea bargain that was *apparently* eight years with the right to argue for a lower sentence. [The petitioner] went to trial and received, after being found guilty by the jury, a sentence of forty years of confinement." (Emphasis added.) The court expressly noted that "Berke did convey and discuss the plea bargains with [the petitioner]. The record is crystal clear that [the petitioner] protested his innocence and always asserted that he wished to proceed to trial. The court is convinced based upon the testimony of [Berke], the testimony at the first habeas trial, that [Berke] did in fact adequately explain the pretrial offer, discuss the case, discuss the maximum punishments, discuss the pros and cons of pleading guilty or not guilty, but left, as he should have, the final decision as to whether to accept or reject such offer to [the petitioner]." It further found Berke's representation of the petitioner to be "sufficiently within that band of representation that will pass constitutional muster."

The court then explained that the petitioner had the burden of proving that "it was reasonably probable that a court, a judge would have accepted the [state's alleged] eight year [plea] offer in this case." The court proceeded to explain that it could not "make the finding that the petitioner [established that] it [was] reasonably probable that [the trial judge] would have accepted the eight year offer, the key word being probable." With respect to this finding, the court highlighted: the petitioner's prior conviction of manslaughter, for which the petitioner had served an eleven year prison sentence; that the petitioner had been arrested in connection with a shooting incident soon after he was released after

serving his sentence for his manslaughter conviction; and that the petitioner had other convictions for crimes involving firearms. On the basis of the evidence before it, the court concluded that the petitioner had not met his burden of proving by a "preponderance of the evidence that it [was] reasonably probable that a court would have accepted" the state's eight year plea offer. As a result of this finding, the court denied the operative petition claiming ineffective assistance by Berke and DeSantis. Subsequently, the petitioner filed a petition for certification to appeal. In that petition, the petitioner stated that the grounds for appeal are: "Whether [the] habeas court erred when it found that [Berke] was not ineffective when he discussed the strengths [and] weaknesses of the state's case but did not advise the petitioner whether he should accept or reject the state's plea offer."[3] On December 4, 2014, the court denied the petition for certification to appeal. This appeal followed.

The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal because it improperly denied his claims of ineffective assistance of counsel with respect to Berke and DeSantis. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits." (Internal quotation marks omitted.) *Melendez* v. *Commissioner of Correction*, 151 Conn. App. 351, 357–58, 95 A.3d 551, cert. denied, 314 Conn. 914, 100 A.3d 405 (2014). To prove that the denial of his petition for certification to appeal constituted an abuse of discretion, "the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Moye* v. *Commissioner of Correction*, 168 Conn. App. 207, 214, 145 A.3d 362 (2016).

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more

of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Internal quotation marks omitted.) *Bozelko* v. *Commissioner of Correction*, 162 Conn. App. 716, 721, 133 A.3d 185, cert. denied, 320 Conn. 926, 133 A.3d 458 (2016).

Here, the petitioner's underlying claims are that the habeas court improperly concluded that (1) Berke provided effective assistance of counsel and (2) DeSantis provided effective assistance of counsel. After determining the merits of these underlying claims, we conclude that the court did not abuse its discretion in denying the petition for certification to appeal.

Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Horn* v. *Commissioner of Correction*, 321 Conn. 767, 775, 138 A.3d 908 (2016). Therefore, "our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Kearney* v. *Commissioner of Correction*, 113 Conn. App. 223, 228, 965 A.2d 608 (2009).

It is well established that "[a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings . . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Citation omitted; internal quotation marks omitted.) *Horn* v. *Commissioner of Correction*, supra, 321 Conn. 775. "To satisfy the second prong of *Strickland*, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . .

The second prong is thus satisfied if the petitioner can demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different." (Internal quotation marks omitted.) Id., 776. "An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied." (Internal quotation marks omitted.) *Bozelko* v. *Commissioner of Correction*, supra, 162 Conn. App. 722–23. The court, however, "may decide against a petitioner on either prong, whichever is easier." *Lewis* v. *Commissioner of Correction*, 165 Conn. App. 441, 451, 139 A.3d 759, cert. denied, 322 Conn. 901, 138 A.3d 931 (2016).

I

The petitioner first claims that the habeas court abused its discretion in denying his petition for certification to appeal because it improperly denied his claim of ineffective assistance of counsel with respect to Berke. As described in the preceding paragraph, to determine whether the habeas court abused its discretion in denying the petition for certification to appeal, this court will look at the underlying merits of the petitioner's claims. See *Bozelko* v. *Commissioner of Correction*, supra, 162 Conn. App. 721. Specifically, the petitioner contends that the habeas court improperly concluded that (1) Berke's performance concerning the state's plea offer was neither deficient nor prejudicial and (2) Berke's failure to advise the petitioner on accessorial liability did not constitute ineffective assistance. We will address each claim in turn.

A

Turning to the petitioner's first claim, we agree with the petitioner that Berke's performance pertaining to the state's plea offer was deficient; however, we are not persuaded that the petitioner established that he was prejudiced by the deficient performance. As " '[a]n ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied' "; id., 722–23; we conclude that the petitioner failed to meet his burden of establishing his ineffective assistance of counsel claim with respect to Berke's performance pertaining to the state's plea offer. Because the petitioner failed to establish that he was prejudiced by Berke's deficient performance, he cannot demonstrate that the issues pertaining to this claim are debatable among jurists of reason, that a court could resolve those issues differently or that the questions raised deserve encouragement to proceed further. Therefore, as we discuss subsequently in this opinion, the petitioner has failed to demonstrate that the court abused its discretion in denying his petition for certification to appeal as to this claim.

We begin by setting forth the governing legal principles in cases involving claims of ineffective assistance

of counsel in the plea bargain context. As previously noted, under the *Strickland* test, "[a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Mahon* v. *Commissioner of Correction*, 157 Conn. App. 246, 253, 116 A.3d 331, cert. denied, 317 Conn. 917, 117 A.3d 855 (2015).

"Pretrial negotiations implicating the decision of whether to plead guilty is a critical stage in criminal proceedings . . . ." (Internal quotation marks omitted.) Id. "[P]lea bargaining is an integral component of the criminal justice system and essential to the expeditious and fair administration of our courts. . . . Commentators have estimated that between 80 and 90 percent of criminal cases in Connecticut result in guilty pleas, the majority of which are the product of plea bargains. . . . Thus, almost every criminal defendant is faced with the crucial decision of whether to plead guilty or proceed to trial. Although this decision is ultimately made by the defendant, the defendant's attorney must make an informed evaluation of the options and determine which alternative will offer the defendant the most favorable outcome. *A defendant relies heavily upon counsel's independent evaluation of the charges and defenses, applicable law, the evidence and the risks and probable outcome of a trial.*" (Emphasis in original; internal quotation marks omitted.) *Ebron* v. *Commissioner of Correction*, 120 Conn. App. 560, 572, 992 A.2d 1200 (2010), rev'd in part on other grounds, 307 Conn. 342, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*,      U.S.      , 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013).

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. . . . To prevail on a claim of ineffective assistance of counsel, both prongs of the *Strickland* test must be satisfied." (Citations omitted; internal quotation marks omitted.) *Mahon* v. *Commissioner of Correction*, supra, 157 Conn. App. 253–54, quoting *Missouri*

v. *Frye*, U.S. , 132 S. Ct. 1399, 1409, 182 L. Ed. 2d 379 (2012); see also *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 357, 53 A.3d 983 (2012) (to show prejudice in rejected plea case, petitioner must establish: "[1] it is reasonably probable that, if not for counsel's deficient performance, the petitioner would have accepted the plea offer, and [2] the trial judge would have conditionally accepted the plea agreement if it had been presented to the court"), cert. denied sub nom. *Arnone* v. *Ebron*, U.S. , 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013).

1

In his challenge to the habeas court's conclusion as to Berke's performance, the petitioner contends that Berke's failure to provide the petitioner his professional advice, assistance and opinion on the petitioner's best course of action concerning the state's plea offer fell below an objective standard of reasonableness and, thus, constituted deficient performance under the first prong of the *Strickland* test. We agree.

In focusing on the performance prong, we are guided by our case law, which provides that "[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Helmedach* v. *Commissioner of Correction*, 168 Conn. App. 439, 453, A.3d (2016).

The petitioner bore the burden of presenting sufficient evidence to establish that Berke's actions constituted deficient performance. In order to establish that Berke's performance was deficient, the petitioner was required to overcome the presumption that Berke's conduct was reasonable. See *Moye* v. *Commissioner of Correction*, supra, 168 Conn. App. 218. In determining what is reasonable, we are guided by "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . ." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 679, 51 A.3d 948 (2012), quoting *Strickland* v. *Washington*, supra, 466 U.S. 688.

This court has recently stated that counsel performs effectively and reasonably when he or she provides a petitioner with adequate information and advice upon which the petitioner can make an informed decision as to whether to accept the state's plea offer. See *Melendez* v. *Commissioner of Correction*, supra, 151 Conn. App. 359. We are mindful that "[c]ounsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness . . . ." (Internal quotation marks omitted.) *Barlow* v. *Commissioner of Correction*, 150 Conn. App. 781, 795, 93 A.3d 165 (2014). Accordingly, "[t]he need for recommendation depends on countless factors, such as the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial compared to the guilty plea . . . whether [the] defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform [his] plea decision." (Internal quotation marks omitted.) Id.

In denying the petitioner's claim with respect to Berke, the habeas court expressly concluded that Berke's representation was not controlled by our decision in *Barlow*. The habeas court explained: "[B]ased upon the facts that have been produced in this trial, [Berke] does not fit within the specific boundaries of *Barlow* . . . . [Berke] did not simply act as a conduit. [Berke] did go further. Later on in 2014, and *Barlow* is a 2014 case—later on in 2014, the case of *Melendez* v. *Commissioner*, 151 Conn. App. 351, reaches a contrary conclusion finding that the representation by counsel for Mr. Melendez did pass constitutional muster. That was a more detailed explanation in which the counsel offered explanations, pros and cons, and a recommendation."[4] In addition, the court noted that "[i]t is clear from all of the testimony that [Berke] did convey and discuss the plea bargains with [the petitioner]. The record is crystal clear that [the petitioner] protested his innocence and always asserted that he wished to proceed to trial. The court is convinced, based upon the testimony of [Berke], the testimony at the first habeas trial, that [Berke] did in fact adequately explain the pretrial offer, discuss the case, discuss the maximum punishments, discuss the pros and cons of pleading guilty or not guilty, but left, as he should have, the final decision as to whether to accept or reject such offer to [the petitioner]. . . . While it would appear that [Berke's] representation may be closer to that of *Barlow* than it is *Melendez*, nevertheless, the court will find that [Berke's] representation was sufficiently within that band of representation that will pass constitutional muster." We disagree.

In *Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 789–90, 796–97, this court held that the petitioner's defense counsel had rendered deficient per-

formance in failing to advise the petitioner adequately regarding the court's plea offer. We noted that the petitioner's counsel had testified during the habeas trial that she refrained from giving the petitioner *any advice* as to the plea offer proposed by the trial court. Id., 801. Counsel further had testified that she "merely gave [the petitioner] the facts of the offer, [and] provid[ed] no assistance or advice as [the petitioner] weighed his options." Id. We concluded that "[a]lthough we agree with the habeas court that [counsel] had no obligation in this case specifically to tell the petitioner whether to take the court's plea offer . . . [counsel did have] an obligation to provide advice and assistance to the petitioner regarding that plea offer, which, she admittedly failed to do." Id., 796–97. We reasoned that "[a]lthough the [petitioner] ultimately must decide whether to accept a plea offer or proceed to trial, this critical decision, which in many instances will affect a [petitioner's] liberty, should be made by a represented [petitioner] with the *adequate professional assistance, advice, and input of his or her counsel.*" (Emphasis in original.) Id., 800. We further noted that "a crucial component of counsel's effective representation during plea negotiations is *giving professional advice* to a [petitioner]. . . . [C]ounsel should give the [petitioner] his or her *professional advice* on the best course of action given the facts of the particular case and the potential total sentence exposure." (Citations omitted; emphasis in original.) Id., 799–800. Therefore, we concluded that counsel's "performance was deficient because she did not give the petitioner her professional advice and assistance concerning, and her evaluation of, the court's plea offer." Id., 802.

In *Barlow*, the petitioner's trial counsel testified that she did not provide *any advice* to the petitioner concerning the plea offer proposed by the court. Id., 801. Similarly, in this case, Berke testified during the habeas trial that it was his general practice *never* to advise his client or give him advice as to whether he should accept or reject a plea offer.[5] As this court held in *Barlow*, advising the petitioner on the strengths and weaknesses of his case, alerting him to his potential exposure and explaining to him the terms of the plea offer is insufficient; without the professional advice as to the best course of action, such representation constitutes deficient performance. Id., 800–802.

Although the petitioner maintained his innocence during pretrial discussions with Berke, Berke had an obligation to provide the petitioner his "professional advice on the best course of action given the facts of the particular case and the potential total sentence exposure." (Emphasis omitted.) Id., 800; see *Cardoza* v. *Rock*, 731 F.3d 169, 178 (2d Cir. 2013) ("defense counsel have a constitutional duty to . . . advise their clients on the crucial decision whether to accept a plea offer" [internal quotation marks omitted]); see also *Vazquez*

v. *Commissioner of Correction*, 123 Conn. App. 424, 437, 1 A.3d 1242 (2010) (stating that "[a] defense lawyer in a criminal case *has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable*" [emphasis added; internal quotation marks omitted]), cert. denied, 302 Conn. 901, 23 A.3d 1241 (2011).

The respondent, however, argues that Berke's performance was not deficient for failing to make a specific recommendation as to whether the petitioner should accept or reject the state's plea offer because such a recommendation was not required under *Barlow*. Although we agree that *Barlow* did not establish a per se rule obligating counsel to provide recommendations regarding plea offers, we are not persuaded by the respondent's argument. *Barlow* set forth an obligation for defense counsel to provide professional advice, assistance and an "informed opinion as to what pleas [to] enter" and to make "an informed evaluation of the options and determine which alternative will offer the [petitioner] the most favorable outcome." (Internal quotation marks omitted.) *Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 798. We, therefore, read *Barlow* to require counsel to provide the petitioner his professional advice, assistance and opinion on the petitioner's best course of action concerning the state's plea offer. This, Berke admits, he did not do.

We note that in his argument that Berke's performance was not deficient pursuant to the standard set forth in *Barlow*, the respondent relies on our decision in *Andrews* v. *Commissioner of Correction*, 155 Conn. App. 548, 110 A.3d 489, cert. denied, 316 Conn. 911, 112 A.3d 174 (2015). That reliance is misplaced.

In *Andrews*, the petitioner challenged the habeas court's finding that he failed to show that his trial counsel was deficient.[6] Id., 551. In support of his claim on appeal, the petitioner relied on *Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 781. See *Andrews* v. *Commissioner of Correction*, supra, 155 Conn. App. 553. This court, however, concluded that because the facts in *Andrews* were distinguishable, the petitioner's reliance on *Barlow* was misplaced. Id. Specifically, we explained that "[u]nlike trial counsel in *Barlow*, who provided no advice or assistance to her client on the plea offer, trial counsel in the present case explained to the petitioner the strengths and weaknesses of the state's case, the charges he was facing, and the maximum sentence he would be exposed to if he was unsuccessful at trial. Trial counsel explained that the petitioner would likely receive a significantly higher sentence than twelve years if he was convicted at trial, that he believed that the state had a strong case against the petitioner, and that it would be a difficult case to win because most of the witnesses were police officers, and one of the police officers had sustained

permanent serious injury. Although trial counsel left the ultimate decision of whether to accept or to reject the offer to the petitioner, he provided the petitioner with adequate professional advice on [his] options and the best course of action, unlike trial counsel in *Barlow*, given the facts of the case and the petitioner's potential total sentence exposure." Id., 554–55.

Unlike counsel in *Andrews*, Berke did not provide the petitioner with his opinion as to whether the state would prevail at trial, nor did he provide advice on the best course of action for the petitioner. This case is thus distinguishable from *Andrews*, where defense counsel explained to the petitioner that in his professional opinion the state had a strong case against the petitioner. See id. Here, the extent of Berke's advice concerning the plea offer was to discuss with the petitioner the specific strengths and weaknesses of the state's case. This is distinguishable from the facts in *Andrews* where defense counsel provided detailed advice on the petitioner's options and best course of action. See id. Therefore, we reject the respondent's argument that *Andrews* v. *Commissioner of Correction*, supra, 155 Conn. App. 554–55, compels us to reach a different conclusion.

For the foregoing reasons, we conclude that this case falls within the reasoning of *Barlow*, and, therefore, contrary to the conclusion of the habeas court, Berke's failure to provide the petitioner his professional advice, assistance and opinion on the petitioner's best course of action concerning the state's plea offer constituted deficient performance under the first prong of *Strickland*.

2

Having concluded that Berke's performance concerning the state's plea offer was deficient, we turn now to the prejudice prong of *Strickland*. The petitioner contends that the court did not provide any factual or legal basis for its "belief" that the petitioner failed to meet his burden of establishing that he was prejudiced by Berke's deficient performance. We disagree.

The following legal principles are relevant to our resolution of this claim. In order to show prejudice stemming from a petitioner's rejection of a plea bargain due to ineffective assistance of counsel, "a petitioner need establish only that (1) it is reasonably probable that, if not for counsel's deficient performance, the petitioner would have accepted the plea offer, and (2) the trial judge would have conditionally accepted the plea agreement if it had been presented to the court." *Ebron* v. *Commissioner of Correction*, supra, 307 Conn. 357. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . In a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation . . . but by demonstrable

realities." (Citation omitted; internal quotation marks omitted.) *Taft* v. *Commissioner of Correction*, 159 Conn. App. 537, 553–54, 124 A.3d 1, cert. denied, 320 Conn. 910, 128 A.3d 954 (2015). "If the habeas court determined that . . . it is not reasonably probable that the trial court would have imposed the sentence embodied in the plea agreement, the prejudice prong has not been satisfied." *Ebron* v. *Commissioner of Correction*, supra, 355–56.

Although the petitioner testified that he would have accepted the state's plea offer but for Berke's deficient performance, he has failed to establish, in accordance with *Ebron*, that there was a reasonable probability that the trial judge would have conditionally accepted the state's plea offer. With respect to this conclusion, we find that the evidence adduced at the habeas trial provided both factual and legal support for the court's determination. In the habeas court's decision, Judge Fuger stated that "while I cannot categorically say yes or no that such a plea bargain would have been accepted, I can say that I do not believe the . . . petitioner in this case has met his burden of proving with a preponderance of the evidence that it is reasonably probable that a court would have accepted the eight year offer." To support this finding, the court expressly stated various factors, including that the petitioner had "a prior conviction for manslaughter for which he served an eleven year sentence. Very shortly after serving that sentence, he was arrested for a shooting incident in which somebody was apparently severely injured. [The petitioner] has other convictions [that] involved a firearm."

The court also recognized "the difficulty of trying to prove that [a court would have conditionally accepted the state's plea offer], particularly in a case such as this where the identities of the particular judges apparently are unknown." Both our Supreme Court and this court have considered the difficulty of trying to prove that the trial court would have accepted the plea offer when the identities of the judges are unknown and/or the record does not provide sufficient evidence regarding the trial court's general practices. For example, in *Ebron* v. *Commissioner of Correction*, supra, 307 Conn. 361, our Supreme Court recognized that "when there is evidence that a particular judge had indicated that he would have conditionally accepted the plea agreement, such evidence is probative on the question of what a reasonable court would have done. We further conclude that such evidence is sufficient to prove prejudice in the absence of any evidence that the particular judge's practice deviated significantly from the normal practice or that the particular sentence would have been an outlier. Because there was no such evidence in the present case, we conclude that the factual finding that [the trial judge] would have conditionally accepted the plea agreement was sufficient to establish prejudice."

Id. In addition, in *Lewis* v. *Commissioner of Correction*, supra, 165 Conn. App. 454, this court held that the petitioner failed to establish prejudice because there was "no evidence in the record that the trial court would have accepted [the] plea agreement . . . ." It then explained that "[t]o hold otherwise on the record before us would amount to pure speculation, in which we decline to engage." Id.

In accordance with the legal principles pertaining to the prejudice prong of *Strickland*, as set forth in *Ebron* and *Lewis*, the record before us does not reveal the identity of the trial judge who would have been presented with the plea offer or whether there was a reasonable probability that a trial judge would have conditionally accepted the state's plea offer. The facts therefore are distinguishable from those in *Ebron*, where the record revealed the identity of the trial judge to whom the plea would have been presented and evidence that the trial judge would have conditionally accepted the plea. *Ebron* v. *Commissioner of Correction*, supra, 307 Conn. 346 n.1. Specifically, in *Ebron*, the prosecutor "testified at the habeas proceeding that [the trial judge] thought [that] the state's [plea] offer was appropriate and that she would not be adjusting it, lowering it or changing it. When asked if [the prosecutor] had any reason to believe that [the trial judge] would not have imposed the agreed on sentence if the petitioner had accepted the plea offer, [the prosecutor] stated that [the trial judge] was a quite experienced judge, and that she would have indicated that the plea offer was too high or too low if she did not intend to accept it. Accordingly, [the prosecutor] believed that [the trial judge] would have imposed [the agreed on sentence]." (Internal quotation marks omitted.) Id.

Contrary to the facts of *Ebron*, here, the only evidence in the record pertaining to whether the trial judge would have conditionally accepted the plea offer was Berke's testimony describing the plea offer as reasonable. We note that Berke was very hesitant to make such a definitive statement concerning the reasonableness of the plea offer. Further, Berke admitted that he did not know whether a trial judge would have accepted the state's plea offer, given the facts of this case.[7] Even with Berke's testimony, the habeas court determined that, due to the paucity of evidence, it could not find that the petitioner established that there was a reasonable probability that the trial judge would have conditionally accepted the plea offer.

We emphasize that "the petitioner's burden of proving that a fundamental unfairness has been done is not met by speculation . . . but by demonstrable realities." (Citations omitted; internal quotation marks omitted.) *Taft* v. *Commissioner of Correction*, supra, 159 Conn. App. 553–54. The petitioner's failure to satisfy his burden of establishing that there was a reasonable probabil-

ity that the trial judge would have conditionally accepted the state's plea offer is fatal to this claim. See *Henderson* v. *Commissioner of Correction*, 129 Conn. App. 188, 196, 19 A.3d 705, cert. denied, 303 Conn. 901, 31 A.3d 1177 (2011). Under the circumstances of this case, the petitioner has not demonstrated prejudice because he failed to provide sufficient evidence to support his claim that there was a reasonable probability that the trial judge would have conditionally accepted the plea offer. See *Lewis* v. *Commissioner of Correction*, supra, 165 Conn. App. 454.

We thus conclude that the petitioner failed to demonstrate that his claim of ineffective assistance of counsel with respect to Berke's representation pertaining to the state's plea offer involved issues that are debatable amongst jurists of reason, that a court could resolve the issue in a different manner, or that the issue is adequate to deserve encouragement to proceed further. Therefore, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal as to this claim. See *Bozelko* v. *Commissioner of Correction*, supra, 162 Conn. App. 729–30.

B

The petitioner next claims that the court abused its discretion in denying his petition for certification to appeal because the court erred in finding that Berke's alleged failure to advise the petitioner on accessorial liability did not constitute ineffective assistance.[8] Specifically, the petitioner argues that Berke had a duty to conduct an independent investigation of the facts, evidence and law in determining which theory he would rely on to defend the petitioner if he proceeded to trial and to inform the petitioner of the ways he could be convicted and sentenced, including as an accessory to the crimes at issue. We disagree.

As enunciated in our well established case law, "the United States Supreme Court [has] determined that [ineffective assistance of counsel claims pertaining to counsel's obligation to investigate the facts and legal principles of each case] must be supported by evidence establishing that . . . counsel's representation fell below an objective standard of reasonableness, and . . . counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Emphasis omitted; internal quotation marks omitted.) *Lapointe* v. *Commissioner of Correction*, 113 Conn. App. 378, 393–94, 966 A.2d 780 (2009). "An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied." (Internal quotation marks omitted.) *Bozelko* v. *Commissioner of Correction*, supra, 162 Conn. App. 722–23. Accordingly, in addressing this claim we focus on the performance prong of the *Strickland* test.

"While it is incumbent on a trial counsel to conduct a prompt investigation of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction . . . counsel need not track down each and every lead or personally investigate every evidentiary possibility." (Internal quotation marks omitted.) *Edwards* v. *Commissioner of Correction*, 87 Conn. App. 517, 525–26, 865 A.2d 1231 (2005). "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." (Internal quotation marks omitted.) *Taft* v. *Commissioner of Correction*, supra, 159 Conn. App. 547. "In a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation, but by demonstrable realities. . . . One cannot successfully attack, with the advantage of hindsight, a trial counsel's trial choices and strategies that otherwise constitutionally comport with the standards of competence. . . . Because this court is constrained to evaluating demonstrable realities, we will not engage in mere speculation." (Citation omitted; internal quotation marks omitted.) *Edwards* v. *Commissioner of Correction*, supra, 526. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Moye* v. *Commissioner of Correction*, supra, 168 Conn. App. 218.

The following additional facts, as set forth by the habeas court, are relevant to this claim. In its decision, the court stated: "It was the state's theory at trial that [the petitioner] was the person who did the shooting based upon statements of eyewitnesses. Based upon the testimony of [the petitioner at the habeas trial], he [was] not the person who did the shooting. He [was], in fact, the driver of the car. Unfortunately, [the petitioner] did not properly communicate these facts to [Berke]." In light of this, the court concluded that "Berke proceeded on the belief that his client was not involved in this shooting, and the reason why [Berke] was under that misapprehension [was] not because he failed to investigate, not because he was ineffective, it was because he trusted that his client, under the protection of attorney-client privilege, was going to tell him the truth, and he did not. As a result, [Berke] went into this process with a client who had lied to him, whose story was not inconsistent with his adamant assertion of innocence, and who made it clear that in no way, shape or form did he intend to take a plea bargain, that he wanted to go to trial and have his day in court."

We agree with the habeas court and are not persuaded

that the petitioner met his burden of establishing that Berke's performance pertaining to accessorial liability was deficient. The authority cited in the respondent's brief, namely, *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 940 A.2d 789 (2008), supports the respondent's assertion that the petitioner did not establish that Berke's advice and investigation concerning accessorial liability was deficient.

In *Crawford*, our Supreme Court concluded that the habeas court properly denied the petitioner's ineffective assistance of counsel claim for failure to investigate "[b]ecause the petitioner did not admit until just before jury selection that he had been the driver of the vehicle . . . ." Id., 599. Our Supreme Court further concluded that "[the petitioner's] trial counsel's attempt to develop a defense relating to misidentification was reasonable in light of the petitioner's insistence that he had not been the driver of the vehicle." Id., 599–600. The facts in *Crawford* are analogous to those in the present case, where the petitioner failed to communicate to Berke that he was "driving the vehicle when [the victim] was shot . . . [t]hat [he] drove the shooter to the location . . . [he was] aware that [he was] driving the shooter to the location for the purpose of the shooter shooting [the victim]" and therefore "Berke proceeded on the belief that the petitioner was not involved in this shooting . . . ." Here, as in *Crawford*, the petitioner continued to claim that he was innocent throughout the discussions, the trial and sentencing, and it was not until after the petitioner was sentenced that Berke received a communication from the petitioner that was inconsistent with the prior information. In addition, the evidence at the habeas trial established only that Berke could not recall whether he had discussed accessorial liability with the petitioner.

As defense counsel is presumed to have rendered adequate assistance unless deficient performance is affirmatively proven, the petitioner in the present case has failed to rebut this strong presumption with credible evidence. See *Sanders* v. *Commissioner of Correction*, 83 Conn. App. 543, 551, 851 A.2d 313, cert. denied, 271 Conn. 914, 859 A.2d 569 (2004). Because the petitioner failed to establish that Berke rendered deficient performance, his ineffective assistance of counsel claim fails.

We thus conclude that the petitioner failed to demonstrate that his claim of ineffective assistance of counsel with respect to Berke's performance pertaining to accessorial liability involved issues that are debatable amongst jurists of reason, that a court could resolve the issue in a different manner, or that the issue is adequate to deserve encouragement to proceed further. We, therefore, further conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal with respect to this claim.

II

The petitioner finally claims that the habeas court abused its discretion in denying his petition for certification to appeal because it improperly denied his claim of ineffective assistance of counsel with respect to DeSantis' performance during the first habeas trial. As previously noted, to determine whether the habeas court abused its discretion in denying the petition for certification to appeal, this court will look at the underlying merits of the petitioner's claims. See *Bozelko* v. *Commissioner of Correction*, supra, 162 Conn. App. 721. As set forth in count one of the operative petition, the only allegation of deficient performance as to DeSantis is his failure to raise the issue of Berke's ineffective assistance during the plea process. Therefore, the sole claim on appeal against DeSantis is the petitioner's allegation that he provided ineffective assistance of counsel during the petitioner's first habeas trial, by failing to raise the issue of the ineffective assistance of Berke.

When a petitioner challenges the habeas court's denial of his operative petition on the basis of ineffective assistance of both his first habeas counsel and his criminal defense counsel, the petitioner must prove both that (1) his habeas counsel was ineffective and (2) his criminal defense counsel was ineffective. *Lapointe* v. *Commissioner of Correction*, supra, 113 Conn. App. 394. Therefore, we are "mindful that the petitioner's [claim] related to his habeas counsel must fail if [his] claims of ineffective assistance of [his criminal defense] counsel are unavailing." Id., 395.

As we previously concluded in part I of this opinion, the petitioner failed to establish his claim of ineffective assistance of Berke. Therefore, the petitioner cannot establish that DeSantis' performance was deficient in failing to raise the claim of ineffective assistance as to Berke in the petitioner's first habeas corpus proceeding because the petitioner did not establish the underlying claim on which that claim is predicated, i.e., that Berke's representation constituted ineffective assistance.

We thus conclude that the petitioner failed to demonstrate that his claim of ineffective assistance of counsel with respect to DeSantis involved issues that are debatable amongst jurists of reason, that a court could resolve the issue in a different manner, or that the issue is adequate to deserve encouragement to proceed further. We, therefore, conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal with respect to this claim.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner filed his first habeas petition alleging ineffective assistance of his defense counsel, Robert Berke, concerning Berke's failure to file a "motion to suppress suggestive identification of prosecution's chief witness" and claiming that the communication between Berke and the petitioner fell below the standard of what a reasonable attorney would have exercised

under similar circumstances. Following a trial, the habeas court denied the petition. The petitioner appealed from that denial, and we dismissed the appeal. *Sanders* v. *Commissioner of Correction*, 118 Conn. App. 905, 984 A.2d 122 (2009). On August 2, 2010, the petitioner filed a second habeas petition, but that was withdrawn on November 6, 2012.

[2] The petitioner also claims that his state and federal rights to due process of law were violated when Berke failed to properly advise him concerning the plea offer and accessory liability, and when DeSantis failed to raise the issue of ineffective assistance of counsel concerning Berke's performance. In turn, the respondent, the Commissioner of Correction, in relying on *Davis* v. *Commissioner of Correction*, 160 Conn. App. 444, 455–56, 124 A.3d 992, cert. denied, 319 Conn. 957, 125 A.3d 1012 (2015), contends that the petitioner's due process claim is unreviewable because the habeas court neither considered nor ruled on the merits of that claim and the petitioner failed to obtain a ruling on it. See id. (declining to review claim when habeas court neither considered nor ruled on it and petitioner failed to alert the habeas court that ruling was inaccurate or incomplete). In the alternative, the respondent further argues that the petitioner also cannot obtain [review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)] of this unpreserved constitutional claim because it arises out of the criminal trial proceedings, and not the acts or omissions of the habeas court. See *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 67 n.2, 967 A.2d 41 (2009) (*Golding* review available only where petitioner challenges actions of habeas court). We agree with the respondent.

We also are not persuaded by the petitioner's argument that his due process claim should be reversed pursuant to the plain error doctrine; see Practice Book § 60-5; or this court's supervisory authority over the administration of justice. See *Lacks* v. *Commissioner of Correction*, 87 Conn. App. 225, 234, 866 A.2d 660, cert. denied, 273 Conn. 922, 871 A.2d 1027 (2005). We disagree.

Pursuant to our case law, a habeas petitioner cannot establish that the court abused its discretion in denying certification on issues not raised in the petition for certification to appeal. *Kowalyshyn* v. *Commissioner of Correction*, 155 Conn. App. 384, 389, 109 A.3d 963, cert. denied, 316 Conn. 909, 111 A.3d 883 (2015). Accordingly, as the petitioner's due process claim was raised in count two of his operative petition, the record does not provide any evidence that the habeas court determined and ruled on this claim. The petitioner stated his grounds for his request for certification to appeal as follows: "Whether [the] habeas court erred when it found that trial counsel was not ineffective when he discussed the strengths [and] weaknesses of the state's case but did not advise the petitioner whether he should accept or reject the state's plea offer . . . [and] such other claims of error found after a complete review of the record." Therefore, "[b]ecause the petitioner failed to raise [his due process claim] in his petition for certification" to appeal; *Kowalyshyn* v. *Commissioner of Correction*, supra, 391; we decline to afford it review.

[3] The petitioner also stated as a ground for appeal: "Such other claims of error found after a complete review of the record." This claim, however, is meaningless because it does not provide the trial judge with notice. "It is well established that [w]e do not entertain claims not raised before the habeas court but raised for the first time on appeal. . . . The purpose of the [petition] is to put the [respondent, the Commissioner of Correction] on notice of the claims made, to limit the issues to be decided, and to prevent surprise." (Citation omitted; internal quotation marks omitted.) *Hankerson* v. *Commissioner of Correction*, 150 Conn. App. 362, 369, 90 A.3d 368, cert. denied, 314 Conn. 919, 100 A.3d 852 (2014).

[4] In *Melendez* v. *Commissioner of Correction*, supra, 151 Conn. App. 359, this court concluded that counsel effectively and reasonably "provided the petitioner with adequate information and advice upon which the petitioner could make an informed decision as to whether he should accept the state's initial five year plea offer." With respect to this conclusion, this court noted that counsel specifically advised the petitioner to accept the plea offer. Id.

[5] As found by the first habeas court, "the petitioner and [Berke] agree that [Berke] did not recommend specifically the taking of any plea bargain. . . . Indeed, [Berke] did not recall the specifics of a plea, but that it was his custom, and in this instance he did not recommend the taking of a plea and that it was not his custom to recommend pleas one way or the other but to leave the decision to the client."

During the habeas proceeding before Judge Fuger, the following exchange

occurred between the petitioner's counsel and Berke:

"Q. [A]nd is—is it your practice to advise the client or give him advice as to whether or not he thinks it's a good idea to take an offer or a bad idea to take an offer?

"A. I never do.

"Q. Okay. And could you explain to the court why you do that?

"A. I present them the positive, the negatives of going to trial . . . the risks of trial, the maximum exposure. I don't present my opinion on whether they should take an offer or not. That's their decision. I've always maintained that that was their decision and not mine. I don't influence clients on what decision they make. I do—I do present them, at least from a legal and factual opinion, the strengths and weaknesses of their case . . . by defense. . . .

"Q. But your job is to give them professional legal advice as to whether or not they should take the plea or whether or not they should go to trial.

"A. I don't tell clients to take the plea."

[6] In the habeas petition, the petitioner in *Andrews* claimed that "his trial counsel provided ineffective assistance by failing to recommend that he accept the plea offered by the trial court . . . ." *Andrews* v. *Commissioner of Correction*, supra, 155 Conn. App. 550. The habeas court, however, found that the petitioner failed to show that his trial counsel's advice was deficient. Id., 551.

[7] In addition, the testimony during the first habeas trial provides further insight into whether it was reasonably probable that such a plea offer would have been conditionally accepted, as Berke testified that he could not recall the exact details of the state's plea offer and that "the issue of being a persistent offender [did] not come up until well into the game, the initial discussions and the pleas discussions did not include any reference that the state was going to charge him as a persistent offender."

[8] In the operative petition, the petitioner made no explicit claim of ineffective assistance of counsel as to accessorial liability, which he now raises on appeal.

———————————————