******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NORMAN LEWIS *v.* COMMISSIONER
OF CORRECTION
(AC 36888)

DiPentima, C. J., and Keller and Prescott, Js.

*Argued February 1—officially released May 10, 2016*

(Appeal from Superior Court, judicial district of Tolland, geographical area number nineteen, Mullins, J.)

*John C. Drapp III*, assigned counsel, with whom, on the brief, were *Joseph A Jaumann*, assigned counsel, and *James R. Fraguela*, former assigned counsel, for the appellant (petitioner).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Yamini Menon*, special deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

PRESCOTT, J. The petitioner, Norman Lewis, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion by denying his petition for certification to appeal and rejecting his claim that his trial counsel's ineffective plea bargaining deprived him of his right to effective assistance of counsel. Having thoroughly reviewed the record, we conclude that the habeas court properly denied the petition for certification to appeal, and, accordingly, we dismiss the appeal.

The record reveals the following facts and procedural history relevant to our consideration of the petitioner's claims. Following a jury trial, the petitioner was found guilty of robbery in the first degree as an accessory in violation of General Statutes §§ 53a-134 (a) (4) and 53a-8 (a), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-48, and interfering with a police officer in violation of General Statutes § 53a-167a.[1] The trial court sentenced the defendant to a total effective term of twenty-one years of incarceration. The petitioner's judgment of conviction was affirmed by this court in a memorandum decision. *State* v. *Lewis*, 142 Conn. App. 901, 63 A.3d 550, cert. denied, 310 Conn 916, 76 A. 3d 632 (2013).

On July 14, 2011, the self-represented petitioner filed a petition for a writ of habeas corpus alleging that his trial counsel, Attorney Ryan E. Bausch, had provided ineffective assistance by failing to object to the jury's viewing of an enhanced surveillance video of the robbery. The petitioner later was appointed a special public defender, who filed an amended petition for a writ of habeas corpus on September 27, 2013. Although the amended petition continued to claim that Bausch had provided ineffective assistance of counsel, it relied on a different theory than the petitioner had asserted in the original petition. The sole claim raised in the amended petition was that Bausch was ineffective because he failed "to properly and competently engage in plea negotiations with the prosecutor on behalf of the petitioner."[2]

The court conducted a habeas trial on January 27, 2014. The petitioner called four witnesses: Attorney Richard Rubino, the trial prosecutor; Bausch; the petitioner; and Attorney Christopher Duby, the petitioner's expert witness. The respondent, the Commissioner of Correction, did not call any witnesses.

The court first heard from Rubino. He testified that the state had a very strong case against the petitioner. As an example, he indicated that the surveillance video of the robbery showed one of the suspects wearing sneakers with a very distinctive yellow zigzag design

on the heel, and that that same design was on the sneakers that the petitioner was wearing at the time he was arrested. Due to the strong case against the petitioner and his past criminal record, which included prior convictions for manslaughter in the first degree and several other robberies, including a federal bank robbery,[3] the state offered the petitioner a plea deal of twenty years to serve. According to Rubino, this was the only offer that was made by the state, although he did speculate that Judge Gold, who handled the pretrial proceedings in this matter, would have allowed the petitioner to argue for somewhere between fifteen and twenty years, as that was "normally how he proceeded back then." He recalled that Bausch had sought a deal of six years, which was something Rubino claimed was "never going to be considered" either by the state or the court. Rubino testified that after the twenty year offer was rejected, no further attempts to reach a plea deal were made because "this was one of those cases [that] . . . was going to trial." He stated in response to a question by the habeas court that it was highly unlikely that he would have offered anything less than twenty years given the severity of the petitioner's record, nor was it likely that the trial court would have accepted any deal that did not include substantial jail time.

Bausch was the second witness called by the petitioner. Bausch testified that, at the time of the petitioner's trial, his practice consisted mostly of criminal defense and immigration matters. Although he had handled between one hundred and one hundred and fifty criminal cases, they had all ended in plea deals. Until the present case, he had never argued a case to a jury. Bausch claimed that he had a good relationship with the petitioner and that, as someone with a lengthy criminal record, the petitioner understood the criminal justice system well, including the process of plea negotiations. In contrast to Rubino's testimony, Bausch believed that the state did not have a strong case against the petitioner because the state lacked any physical evidence, and he thought "that [the petitioner] had a really good chance" to win on the robbery charges. Bausch relayed to the petitioner, however, that he likely would lose on the charge arising from the high speed car chase with the police prior to his arrest. He informed the petitioner that even if he was acquitted on the robbery charges, he likely would receive a minimum sentence of six years. According to Bausch, the petitioner instructed him to get an offer "as low as you can," but never specified any exact number or an acceptable range. On the basis of the petitioner's age and health issues, Bausch assumed that the petitioner would not accept any plea of more than eight years. After the state rejected Bausch's proposed six year plea, Bausch made no counteroffer and relayed to the petitioner that the case was "going to trial."

According to Bausch, the petitioner never asked him

to go back and negotiate for a plea higher than six years, never insisted that Bausch reach a plea deal, and never indicated that he wanted to avoid trial at all costs. When the petitioner's habeas counsel asked Bausch if part of his plea assessment was his desire to try his first criminal jury case, Bausch responded: "I'd like to hope not."

After Bausch, the petitioner testified. He acknowledged that during the time he was represented by Bausch, the two had met and spoken about his case at least seven or eight times, and that they had discussed the relative strengths and weaknesses of the case. He claimed that he told Bausch that he really did not want to go to trial because of his past criminal history, and that if Bausch could get him a "good deal," he would take it. According to the petitioner, the only plea offer that Bausch presented to him was for twenty-two years,[4] which he understood did not include any right to argue for less time or any suspended time, probation, or special parole. He claimed on direct examination that he never placed any limits on Bausch regarding the amount of time he would be willing to consider. He told Bausch to get him as little time as he possibly could, suggesting at one point "maybe ten years." He claimed that he never asked Bausch to offer only a six year plea, and that he did not know where that number came from, stating that he did not believe that the state would have ever accepted such a plea given his past convictions. Importantly, he further testified that he would have accepted a plea of fourteen years if one had been offered, but he claimed that he never communicated to Bausch any ceiling on the number of years he would have agreed to accept.

The last witness to testify was Duby, whom the court qualified as an expert in the field of criminal practice. He testified that the state's case against the petitioner was "potent," and that unless the petitioner had insisted that he wanted to go to trial, a reasonably competent criminal defense lawyer would have conducted ongoing plea negotiations throughout the proceedings in an effort to avoid a trial.

In addition to the aforementioned testimony, the transcripts of the criminal trial were also entered into evidence. A review of those transcripts reveals two pretrial proceedings during which the status of plea negotiations was discussed on the record. First, at a hearing on February 5, 2009, the following colloquy occurred:

"The Court: We've had some discussions on the case today, frankly, based on what I see to be the seriousness of the case and particularly given [the petitioner's] significant prior record, I don't have any reason to believe this case is going to be resolved short of trial. You don't disagree with that?

"[Bausch]: I don't disagree with that, Your Honor.

Though it might as we negotiate.

"The Court: It might be. But this is going—it's a case in which the state understandably is going to be seeking a significant period of incarceration. So, I'm going to put the case on the firm jury list."

Later, at a hearing on December 21, 2009, the following colloquy occurred:

"The Court: I know the case is on the firm jury list but trial is going to be starting, I think. Were there ever formal numbers placed on this? I mean, is this a case you want to try to resolve or do you want the trial to start?

"[Bausch]: We had talked about numbers. And the numbers, Your Honor, then we discussed in chambers, were too high, Your Honor, for [the petitioner] to be able to accept. So we're going to go to trial, Your Honor.

"[Rubino]: We were essentially *at a cap*[5] of twenty years. And I don't think it was anything that we put a floor on or anything like that. But it may have been that we were talking between—

"The Court: All right. You understand it would be a right to argue for lesser time. So are the parties ready to go?" (Emphasis added; footnote added.)

After hearing arguments from both counsel, the habeas court, *Mullins, J.*, indicated that it would take the petition under advisement and issue a written decision. The court later issued a memorandum of decision denying the petition for a writ of habeas corpus. According to the court, even if the petitioner demonstrated that Bausch had failed to properly and competently engage in plea negotiations with the Rubino, the petitioner had failed to establish that he was prejudiced by Bausch's deficient performance. In particular, after summarizing the habeas trial testimony, the court reasoned as follows: "The petitioner has not demonstrated that there is a reasonable probability that, but for [Bausch's] performance, the plea negotiations would have resulted in a different outcome in this case. The evidence adduced at the habeas trial indicates that there was only one offer made by the state for twenty years of incarceration, and the petitioner rejected that offer. The state made no counteroffer after the petitioner rejected its initial offer. There was no evidence provided at trial that, in light of the perceived strength of the state's case and the petitioner's extensive criminal record, the state would have made a lower offer. Indeed, [Rubino] credibly testified that, based on the petitioner's record, he was not going to offer anything less than the twenty years. Thus, notwithstanding [Bausch's] performance, which the court does not condone, the state was not willing to, and did not, offer anything less than twenty years and the petitioner was not willing to accept that offer, which was the only available offer. Under the circumstances of this case, the petitioner has

not demonstrated prejudice."

The petitioner filed a petition for certification to appeal the court's judgment, which the habeas court denied. This appeal followed.

The petitioner initially claims that the court abused its discretion by denying his petition for certification to appeal. Specifically, the petitioner argues that whether he was prejudiced by his counsel's failure to competently engage in plea negotiations is a question "that could have been decided differently by a court and is debatable among jurists of reason." Because we disagree, we dismiss the appeal.

We begin by setting forth our well established standard of review. "In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), [our Supreme Court] incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Emphasis in original; internal quotation marks omitted.) *Taft* v. *Commissioner of Correction*, 159 Conn. App. 537, 543–44, 124 A.3d 1, cert. denied, 320 Conn. 910, 128 A.3d 954 (2015).

"[W]e recognize that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . Pretrial negotiations implicating the decision of whether to plead guilty is a critical stage . . . and plea bargaining is an integral component of the criminal justice system . . . ." (Citation omitted; internal quotation mark omitted.) *Daniel* v. *Commissioner of Correction*, 57 Conn. App. 651, 664, 751 A.2d 398, cert. denied, 254 Conn. 918, 759 A.2d 1024 (2000). "To succeed on

a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment [to the United States constitution]. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Citations omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712–13, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). It is axiomatic that courts may decide against a petitioner on either prong, whichever is easier. Id., 713; see also *Strickland* v. *Washington*, supra, 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant").

"The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012).

Turning to the present case, the habeas court ruled that even if the petitioner satisfied the performance prong of *Strickland* and demonstrated that Bausch had not engaged in competent plea negotiations with the state—effectively having ended negotiations after rejecting the first offer made by the state—the petitioner's claim nonetheless failed on the prejudice prong, because he failed to show how he was prejudiced by Bausch's deficient performance. We agree with the habeas court.

In order to demonstrate prejudice, the petitioner needed to establish that reasonably competent negotiation likely would have resulted in a better plea offer than the twenty-one years he was sentenced to following trial, and that, had Bausch secured a more favorable offer, he would have accepted that offer and pleaded guilty. Although there is some evidence in the record

from which reasonable jurists might have concluded that a more favorable plea deal was available had Bausch not so quickly abandoned negotiations, there is simply no evidence that the petitioner would have accepted that deal.

The habeas court found Rubino's testimony credible that the state had offered a plea deal of twenty years to serve and that it was highly unlikely that they would have been open to offering any less than twenty years even if Bausch had continued to pursue negotiations given the strength of the state's case, the petitioner's extensive criminal background, and his prior federal sentence of fifteen years for bank robbery. The notion that it was likely futile to try to negotiate for a significantly lower plea is supported by the testimony of both trial attorneys and by the trial court's statement during pretrial that this was likely a case that would not be resolved by plea and was going to go to trial. There is, nevertheless, also some evidence in the record that had Bausch more aggressively pursued negotiations, he might have secured an offer of a plea agreement that included the right to argue for a sentence of less than twenty years.

We recognize, for example, that it is undisputed from a review of the transcript of the December 21, 2009 pretrial hearing that, in his colloquy with the trial court regarding plea negotiations, Rubino stated that they were "essentially at a cap of twenty years," but had not "put a floor on or anything like that," which reasonably could be viewed as suggesting that the state's offer of twenty years had not foreclosed the possibility of a deal for less prison time. Likewise, the criminal court seemed to indicate that any deal for twenty years would include "a right to argue for lesser time," which is consistent with Rubino's acknowledgement at the habeas trial that the trial court likely would have accepted a deal with a right to argue for as little as fifteen years. That evidence is somewhat inconsistent with the habeas court's factual finding that the state was unwilling to, and did not, offer anything less than a straight twenty year plea deal. We nevertheless conclude that any such factual discrepancy is inconsequential here.

There is simply no evidence in the record that the trial court would have accepted a plea agreement with a sentence of twenty years to serve with a right to argue for less and then would have contemplated imposing a sentence as low as fourteen years or less to serve. To hold otherwise on the record before us would amount to pure speculation, in which we decline to engage. See *Heredia* v. *Commissioner of Correction*, 106 Conn. App. 827, 833, 943 A.2d 1130, cert. denied, 287 Conn. 918, 951 A.2d 568 (2008). Further, even assuming that Bausch may have been able to secure an agreement on behalf of the petitioner that included the right to argue for a sentence of less than twenty years, that alone does

not establish prejudice without some evidence in the record that it is reasonably likely that the petitioner would have accepted such a deal and pleaded guilty because such an agreement would have permitted the trial court, in its sentencing discretion, to impose a sentence of fourteen years. Although the petitioner did testify that he would have accepted a deal of fourteen years, he was never asked if he would have accepted a twenty year deal with the right to argue for less. It was the petitioner's burden to establish not only that he may have secured a more favorable deal absent Bausch's deficient performance, but that he would have taken the deal if it had been offered.[6]

On the basis of our review of the record, we conclude that the petitioner has failed to demonstrate that the issue of whether he was prejudiced by Bausch's plea bargaining efforts, or lack thereof, is debatable among jurists of reason, could be resolved in a different manner, or otherwise deserves encouragement to proceed further. Accordingly, the habeas court did not abuse its discretion by denying the petition for certification to appeal, and we lack jurisdiction to consider the merits of the present appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The trial transcripts, which were admitted into evidence at the habeas trial, reveal that the jury reasonably could have found the following facts underlying the petitioner's conviction. In 2008, the petitioner and an accomplice, Earl Scott, robbed a bank in Bloomfield. The two men, dressed to conceal their identities and armed with guns, assaulted a security guard stationed at the bank's entrance, forcing him into the bank. The petitioner disarmed the guard and forced him to the ground in the customer area of the bank, while Scott jumped over the counter and, at gunpoint, forced two tellers to fill a bag with approximately $18,000 in cash. The petitioner and Scott then left the bank and fled down a back alley. A witness at a neighboring business observed the two men running from the bank and getting into a silver vehicle. She was able to take note of the vehicle's license plate number. The police, who arrived shortly after the robbery, were able to identify the owner of the getaway vehicle from the plate number provided by the witness and to obtain an address. The police staked out the owner's address and, as a result, arrested Scott as he was leaving. During that arrest, the petitioner arrived in the silver getaway car. The police ordered him to stop, but the petitioner drove off, leading to a high speed chase. The petitioner eventually crashed the vehicle and was apprehended by the police. Through their investigation, the police were able to match footprints left on the bank's counter to sneakers worn by Scott. Further, surveillance video from the bank showed that a logo on the sneakers worn by the petitioner was consistent with one on the sneakers worn by the robber who had not jumped over the counter. Cell phone records indicated that the two suspects had called each other numerous times just prior to the robbery. Finally, the owner of the vehicle and the petitioner lived together, and the owner had given the petitioner permission to use the car on the morning of the robbery.

[2] To the extent that the petitioner now seeks to argue on appeal that Bausch was ineffective because he failed to convey accurately the terms of the state's or the court's plea bargain offer, that issue was not raised in the operative amended petition, nor was it argued and decided by the habeas court. We will not address a claim raised for the first time on appeal as this would amount to an ambush of the habeas court, which could not have abused its discretion in denying his petition for certification to appeal as it relates to an issue that was not properly raised. See *Hankerson* v. *Commissioner of Correction*, 150 Conn. App. 362, 369–70, 90 A.3d 368, cert. denied, 314 Conn. 919, 100 A.3d 852 (2014).

[3] Although the state filed a part B information alleging that the petitioner

was a persistent offender, it later withdrew it.

[4] The petitioner was present and heard both Bausch's and Rubino's testimony that the only offer by the state was for twenty years. When petitioner's habeas counsel pointed out the discrepancy to the petitioner, he nevertheless insisted that the only deal he had been made aware of was a twenty-two year plea deal. The twenty year figure testified to by the attorneys, however, is supported by other evidence in the record. Specifically, twenty years is the number mentioned at a December 21, 2009 pretrial hearing before Judge Gold, as set forth later in this opinion.

[5] In plea bargaining parlance, a "cap" represents a maximum possible prison term that a defendant agrees the court may impose, at its discretion, as part of the plea agreement, but that the defendant is entitled to argue at sentencing that the court should impose less than the maximum sentence. See *State* v. *Anderson*, 220 Conn. 400, 405, 599 A.2d 738 (1991).

[6] We note that the petitioner was present in court when the trial court indicated that he might secure a deal of twenty years with a right to argue for less.

———————————————————