******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

COURTNEY GREEN *v.* COMMISSIONER OF
CORRECTION
(AC 38205)

Alvord, Sheldon and Harper, Js.

*Argued October 27, 2016—officially released April 25, 2017*

(Appeal from Superior Court, judicial district of
Tolland, geographical area number nineteen, Oliver, J.)

*Norman A. Pattis*, for the appellant (petitioner).

*Harry Weller*, senior assistant state's attorney, with
whom, on the brief, were *Kevin T. Kane*, state's attor-
ney, and *Randall Blowers*, former special deputy assis-
tant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Courtney Green, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the habeas court improperly rejected his claims that (1) he received ineffective assistance of counsel due to his attorney's failure to advise him properly regarding the sentencing consequences of his guilty pleas, and (2) his guilty pleas were not made knowingly, intelligently, and voluntarily because the trial court failed to ensure he was not under the influence of any medications that would inhibit his ability to enter guilty pleas. We conclude that the habeas court properly rejected the petitioner's ineffective assistance of counsel claim on the ground that he failed to demonstrate prejudice as required under the test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), as modified by *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 357, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*, U.S. , 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013). We also conclude that the petitioner's second claim must fail as a matter of law because, although it is common practice in Connecticut and perhaps advisable to do so, the law does not require a court to determine whether a defendant's faculties are impaired by any medications prior to accepting guilty pleas. See *State* v. *Ocasio*, 253 Conn. 375, 378–79, 751 A.2d 825 (2000). Accordingly, we affirm the judgment of the habeas court.

The following facts underlie the criminal conviction from which the present habeas petition arises.[2] On July 19, 2008, Stamford police were dispatched to a bar on Selleck Street in Stamford known as Harry O's. Their investigation revealed that the petitioner had engaged in an altercation with Jonathan Payano, whom the petitioner had accused of attempted pickpocketing. This altercation culminated with the petitioner confronting Payano and his companions outside of the bar. In the course of this confrontation, the petitioner brandished a firearm and proceeded to shoot Payano and two of his companions, Michael Garrabito and Harvey Castro, from very close range. Payano and Garrabito each were shot in the leg, and Castro was shot in the hip and in the hand while attempting to push Garrabito out of the line of fire. A witness told police that the wounded men quickly escaped into the bar while the petitioner discarded the firearm and fled the scene. Payano, his companions, and employees of the bar all identified the petitioner as the shooter and subsequently identified the petitioner in photographic arrays.

The petitioner was arrested on August 1, 2008, approximately two weeks after the shooting. During the subsequent criminal proceedings, the petitioner was represented by attorney Wayne Keeney. Keeney

attempted to negotiate with the state's attorney, offering guilty pleas in exchange for a reduced sentence. Ultimately, those negotiations failed to produce an offer that the petitioner considered acceptable, and so, on April 21, 2009, pursuant to Keeney's advice, the petitioner pleaded guilty to three counts of assault in the first degree by means of the discharge of a firearm in violation of General Statutes § 53a-59 (a) (5), with no sentence agreement from the state, hoping that Keeney could argue for a shorter sentence. He was subsequently sentenced to twenty years of incarceration.

On February 6, 2015, the petitioner filed the operative petition for a writ of habeas corpus, alleging that Keeney had rendered ineffective assistance in failing to provide adequate advice to the petitioner regarding his guilty pleas, and that the trial court's failure to inquire whether the petitioner was under the influence of any medications that might impair his judgment rendered his pleas not knowing and voluntary. On March 26, 2015, a trial was conducted on the petitioner's claims, at which the only witnesses were Keeney and the petitioner. The habeas court made the following findings that are relevant to the petitioner's claims on appeal. From the outset of his representation of the petitioner, Keeney believed that the state had a very strong case against the petitioner and that, based on his lengthy criminal exposure, it was in the petitioner's best interests to seek a plea deal. During plea negotiations, the state offered the petitioner a sentence of twenty or twenty-five years of incarceration in exchange for pleading guilty, which the petitioner rejected on Keeney's advice. Later, when the state offered the petitioner a sentence of twenty years, suspended after fifteen years, to be followed by a likely term of either probation or conditional discharge, in exchange for pleading guilty, the petitioner rejected this offer as well on Keeney's advice. Keeney recommended that the petitioner reject each of these plea offers because he considered the proposed sentences disproportionately high, given the nonfatal injuries suffered by the victims. The state never made any other offers, contrary to the petitioner's claim that the state made an offer of fifteen years.[3]

After the state's second offer, Keeney decided, based on his experience in prior dealings with the prosecutors in the Hartford judicial district, that it would be advantageous to continue the plea negotiation process. He sought approval from the petitioner to make a counteroffer to the state, in which the petitioner would serve seven to eight years in exchange for pleading guilty. The petitioner rejected this proposal, stating that the eight year upper limit was "a year too much." Finally, with trial approaching, Keeney advised the petitioner that, due to the strength of the state's case, it would be unwise to proceed to trial where he likely would be convicted and the sentence likely would be twenty-five years of imprisonment. Rather, based on previous in-

chambers conversations, Keeney advised the petitioner that the judges did not appear to believe that the case warranted a long sentence and that Keeney felt confident he could argue the sentence down to ten to twelve years if the defendant entered "open pleas" of guilty. The petitioner ultimately followed this advice.

On April 21, 2009, pursuant to Keeney's advice, the petitioner entered "open pleas," which meant there was no agreement with the state regarding the sentence to be imposed, and thus he faced up to the maximum statutory sentence of three consecutive terms of twenty years imprisonment, for a total of sixty years imprisonment. Before accepting the petitioner's pleas, the court, *Nigro, J.*, canvassed the petitioner regarding his understanding of the implications of the pleas, but did not inquire whether the petitioner was in any way impaired by medication. The court was satisfied with the petitioner's answers and found that the pleas were entered knowingly and voluntarily with the effective assistance of counsel. Thereafter, the pleas were accepted and the petitioner was sentenced to twenty years of incarceration.

On July 13, 2015, after making the aforementioned findings of fact, the habeas court, *Oliver, J.*, denied the petition. The court concluded that the petitioner had failed to establish prejudice on his claim of ineffective assistance of counsel because he did not establish that there was a reasonable probability that he would have accepted the second plea offer if not for counsel's allegedly deficient performance. The court also rejected the petitioner's claims that his pleas were not knowing and voluntary because there was no credible evidence that the petitioner was under the influence of any substance that negatively impacted his ability to enter knowing and voluntary pleas.[4] On July 27, 2015, the habeas court granted certification to appeal the denial of the petition for a writ of habeas corpus.

I

The petitioner first argues that the habeas court incorrectly concluded that he was not denied his constitutional right to the effective assistance of counsel. He argues that Keeney deficiently advised him regarding the favorability of particular plea offers from the state and regarding his chances of obtaining a better sentence through open pleas. If not for this advice, the petitioner argues that he would have accepted a plea offer of twenty years incarceration, with execution suspended after fifteen years, and would not have been sentenced to twenty years after entering the open pleas recommended by Keeney.

"It is well settled that in reviewing the denial of a habeas petition alleging the ineffective assistance of counsel, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erro-

neous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Gerald W.* v. *Commissioner of Correction*, 169 Conn. App. 456, 465, 150 A.3d 729 (2016), cert. denied, 324 Conn. 908, 152 A.3d 1246 (2017).

"We begin our analysis with the legal principles that govern our review of the petitioner's claim. A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings." (Internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, 169 Conn. App. 266, 277, 149 A.3d 185 (2016), cert. denied, 324 Conn. 906, 152 A.3d 544 (2017). "Pretrial negotiations implicating the decision of whether to plead guilty is a critical stage in criminal proceedings . . . . [P]lea bargaining is an integral component of the criminal justice system and essential to the expeditious and fair administration of our courts. . . . Commentators have estimated that between 80 and 90 percent of criminal cases in Connecticut result in guilty pleas, the majority of which are the product of plea bargains. . . . Thus, almost every criminal defendant is faced with the crucial decision of whether to plead guilty or proceed to trial. Although this decision is ultimately made by the defendant, the defendant's attorney must make an informed evaluation of the options and determine which alternative will offer the defendant the most favorable outcome. A defendant relies heavily upon counsel's independent evaluation of the charges and defenses, applicable law, the evidence and the risks and probable outcome of a trial." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 825, 153 A.3d 8 (2016); see also *Missouri* v. *Frye*, 566 U.S. 134, 140, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012). But ultimately, the decision of whether to accept a particular plea offer is the defendant's alone.

The right to the assistance of counsel "arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel." (Internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, supra, 169 Conn. App. 277. "In order to establish an ineffective assistance of counsel claim a petitioner must meet the two-pronged test enunciated in *Strickland* v. *Washington*, [supra, 466 U.S. 687]. Specifically, the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Empha-

sis in original; internal quotation marks omitted.) *Robinson* v. *Commissioner of Correction*, 167 Conn. App. 809, 817, 144 A.3d 493, cert. denied, 323 Conn. 925, 149 A.3d 982 (2016).

In order to prevail on the prejudice prong for an ineffective assistance claim arising from a rejected plea offer, our Supreme Court has held that "a petitioner need establish only that (1) it is reasonably probable that, if not for counsel's deficient performance, the petitioner would have accepted the plea offer, *and* (2) the trial judge would have conditionally accepted the plea agreement if it had been presented to the court."[5] (Emphasis added.) *Ebron* v. *Commissioner of Correction*, supra, 307 Conn. 357. "It is axiomatic that courts may decide against a petitioner on either prong [of the *Strickland* test], whichever is easier." *Lewis* v. *Commissioner of Correction*, 165 Conn. App. 441, 451, 139 A.3d 759, cert. denied, 322 Conn. 901, 138 A.3d 931 (2016), citing *Strickland* v. *Washington*, supra, 466 U.S. 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner]").

In the present case, the habeas court did not decide whether Keeney's performance was deficient. Rather, it denied the habeas petition on the basis of its determination that the petitioner failed to meet his burden under the prejudice prong of the *Strickland* test, as modified by *Ebron*. Even if the petitioner had shown that Keeney's advice was deficient, the habeas court concluded that he had nonetheless failed to show that, but for this allegedly deficient performance, he would have accepted the state's earlier plea offer of twenty years with execution suspended after fifteen years and followed by either a likely term of probation or, in the alternative, conditional discharge.

To satisfy the prejudice prong, the petitioner had the burden of showing that without Keeney's allegedly deficient advice, he would have accepted the state's plea offer. See *Sanders* v. *Commissioner of Correction*, supra, 169 Conn. App. 826. The heart of the petitioner's argument is that the prejudice caused is evident in the fact that the state had made a plea offer of fifteen years,[6] which the petitioner rejected on Keeney's advice, and that the petitioner was ultimately sentenced to twenty years by entering the open pleas, as recommended by Keeney. The habeas court expressly concluded that there was no reasonable probability that the petitioner would have accepted the state's offer of twenty years with execution suspended after fifteen years. This conclusion is proper because it is supported by testimony from both Keeney and the petitioner. Both testified that Keeney had sought approval from the petitioner to make a counteroffer to the state of seven to eight years incarceration and that the petitioner had rejected this proposed offer. The habeas court found it significant that

the petitioner refused the proposed counteroffer because he viewed the proposed upper limit of eight years to be "a year too much." Based on this testimony, the habeas court understandably determined that the petitioner's claim that he would have accepted an earlier plea offer—whether of fifteen or twenty years—lacked credibility in light of his refusal to authorize a counteroffer of seven to eight years because he thought the proposed sentence was too long.

In sum, we are convinced that the habeas court properly determined that the petitioner failed to meet his burden of establishing prejudice under the *Strickland* standard, as modified by *Ebron*. Accordingly, the habeas court did not err in denying his petition for a writ of habeas corpus with respect to his ineffective assistance of counsel claim.

## II

The petitioner next argues that his guilty pleas were not made knowingly, intelligently, and voluntarily because the trial court failed to inquire during the plea canvass whether the petitioner was using any medications that might affect his judgment. He argues that, although current law does not require this inquiry, this court should recognize the prevailing custom in our jurisdiction to pose this question during a plea canvass and hold that the failure to do so renders a subsequently accepted plea void, as not knowing, intelligent, and voluntary. We are bound by precedent from our Supreme Court holding otherwise.

"We begin our analysis by setting forth the law governing the entry of guilty pleas. As established by the United States Supreme Court in *Boykin* v. *Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury. . . . In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. . . . These considerations demand the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequences." (Internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, supra, 169 Conn. App. 282–83.

"We, therefore, require the trial court affirmatively to clarify on the record that the defendant's guilty plea was made intelligently and voluntarily. . . . A determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all the relevant circumstances. . . . [W]e conduct a plenary review of the circumstances surrounding [a] plea to

determine if it was knowing and voluntary." (Internal quotation marks omitted.) *State* v. *Simpson*, 169 Conn. App. 168, 185–86, 150 A.3d 699, cert. granted on other grounds, 324 Conn. 904, 151 A.3d 1289 (2016).

The constitutional principles of accepting a guilty plea outlined in *Boykin* are embodied in Practice Book §§ 39-19 and 39-20. See *State* v. *Andrews*, 253 Conn. 497, 504, 752 A.2d 49 (2000). The case law is clear that where the record reveals that the trial court's plea canvass substantially complied with these provisions, the plea will not be invalidated on the ground that it was not knowing and voluntary due to a claimed defect in the plea canvass. *State* v. *Anthony D.*, 320 Conn. 842, 849 n.6, 134 A.3d 219 (2016); *State* v. *Ocasio*, supra, 253 Conn. 378–79.

Practice Book § 39-19 provides in relevant part that the court must ensure the defendant fully understands "(1) The nature of the charge to which the plea is offered; (2) The mandatory minimum sentence, if any; (3) The fact that the statute for the particular offense does not permit the sentence to be suspended; (4) The maximum possible sentence on the charge . . . (5) The fact that he . . . has a right to plead not guilty or to persist in that plea if it has already been made, and the fact that he . . . has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him . . . and the right not to be compelled to incriminate himself . . . ." This rule of practice does not require the court to inquire whether the defendant is potentially under the influence of any medications that may impair his judgment. There is no requirement in our case law that the trial court venture beyond the enumerated requirements of § 39-19, unless otherwise required by law.[7] See *State* v. *Andrews*, supra, 253 Conn. 504; *State* v. *Ocasio*, supra, 253 Conn. 378–79; *Flomo* v. *Commissioner of Correction*, supra, 169 Conn. App. 283–84. None of the enumerated requirements of § 39-19 obligates the trial court to inquire about medications.

Section 39-20[8] of the Practice Book similarly prohibits the trial court from accepting a guilty plea without first addressing the defendant in open court to determine whether the plea is entered voluntarily, as measured by certain prescribed considerations. Its requirements are concerned with avoiding pleas that are coerced or otherwise the result of improper incentives. This section requires the court to determine that the plea "is not the result of force or threats or of promises apart from a plea agreement" and whether the plea "results from prior discussions between the prosecuting authority and the defendant or his or her counsel." Practice Book § 39-20. As with § 39-19, the binding precedent of our Supreme Court holds that substantial compliance with § 39-20 satisfies its requirements, and the trial

court is not required to venture beyond its commands. See *State* v. *Ocasio*, supra, 253 Conn. 378–79.

Considering the preceding precedent, we cannot conclude that the habeas court incorrectly determined that the petitioner's guilty pleas were knowing, intelligent, and voluntary on the grounds claimed here. Our review of the plea canvass leads us to the same conclusion as the habeas court, namely, that the canvass substantially complied with §§ 39-19 and 39-20. We agree with the respondent, the Commissioner of Correction, that the primary authority the petitioner relies on in support of his position is readily distinguishable and is not controlling as to our application of §§ 39-19 and 39-20.[9] We conclude, based on the existing precedent and facts of this case,[10] that the habeas court did not err in denying the petitioner's due process claim that his pleas were not knowingly, intelligently, and voluntarily made due to an alleged defect in the court's plea canvass.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The habeas court granted certification to appeal from the judgment.

[2] These facts are as stated by the state's attorney and agreed to by the petitioner when he pleaded guilty.

[3] Although it is unclear, we presume the petitioner is simply referring to the total effective sentence of fifteen years implied by the state's second offer of twenty years, suspended after fifteen years and followed by either a likely term of probation or alternatively conditional discharge. We note, however, that a total sentence of fifteen years, with no period suspended, is not the same as a twenty year sentence, suspended after fifteen years with a term of probation or conditional discharge. Under the latter sentence, the petitioner would have still faced exposure to serving the remainder of the twenty year sentence if he violated the terms of his release under either a term of probation or conditional discharge, as provided by General Statutes § 53a-32. This distinction is significant given that the habeas court's findings show the petitioner was particularly sensitive to the length of proposed sentences and it is reasonable to presume he would have been more resistant to longer sentences.

[4] The petitioner has claimed that at the time he entered his pleas, he was using a medication called Acyclovir and that he was suffering from certain side effects that impact a small number of users, including confusion, decreased consciousness, delirium, and agitation. The habeas court also found that four days after entering the pleas at issue in this appeal, the petitioner entered a guilty plea in an unrelated matter. During this subsequent plea, that court's plea canvass included a question about medication, to which the petitioner stated that he was taking Acyclovir and that the drug did not prevent him from fully understanding the proceedings.

[5] The habeas court in the present appeal correctly employed this standard from *Ebron*. However, in doing so, the habeas court erroneously imposed an additional element that our Supreme Court expressly rejected in *Ebron*, namely, that the petitioner must also show that there was no intervening circumstance that would have caused the court or the prosecution to withdraw consent to the plea agreement. This additional element arises from the decision of the United States Supreme Court in *Missouri* v. *Frye*, supra, 566 U.S. 148, which informed our Supreme Court's decision in *Ebron*. The court in *Ebron* rejected this additional element because it creates the potential for a factual paradox at the prejudice and remedy stages of a habeas proceeding. The paradox may arise in that the habeas court could determine at the prejudice stage, in finding prejudice, that no intervening circumstance would have prompted the plea agreement to be revoked, and then at the remedy stage conclude that some intervening circumstance now renders the sentence attached to the plea agreement to be insufficient. See *Ebron* v. *Commissioner of Correction*, supra, 307 Conn. 355–57. Nevertheless, we conclude that this error by the habeas court was harmless because the court decided the issue exclusively on the first part of the *Ebron* standard, that

the petitioner failed to establish a reasonable probability that he would have accepted the plea offer.

[6] As noted previously, the habeas court expressly found that the state never made an offer of fifteen years incarceration. See footnote 3 of this opinion. We understand his reference to be to the total effective sentence of the state's second offer of twenty years of incarceration, with execution suspended after fifteen years.

[7] For example, General Statutes § 54-1j imposes the additional requirement that the court "shall not accept a plea of guilty or nolo contendere . . . unless the court first addresses the defendant personally and determines that the defendant fully understands that if the defendant is not a citizen of the United States, conviction of the offense for which the defendant has been charged may have the consequences of deportation or removal from the United States, exclusion from readmission to the United States or denial of naturalization . . . ." There simply is no similar statute or case requiring the additional inquiry into medication that the petitioner urges here.

[8] Practice Book § 39-20 provides that "[t]he judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his or her counsel."

[9] The petitioner cites to *United States* v. *Rossillo*, 853 F.2d 1062, 1066–67 (2nd Cir. 1988), in which the United States Court of Appeals for the Second Circuit held that a trial court, upon being informed that a defendant is currently taking medication, has an obligation under rule 11 of the Federal Rules of Criminal Procedure to inquire further about the effects of that medication on the defendant's ability to understand the implications of his plea. He argues that, due to the similarity of this federal rule and our Practice Book §§ 39-19 and 39-20, that we should be guided by this decision of the Second Circuit. First, it must be noted that while these rules are similar in spirit and, to some extent, content, these rules are *not* the same. Rule 11 (b) (1) provides in relevant part that, before accepting a guilty plea, the court must address the defendant in open court to inform the defendant of and determine the defendant's understanding of certain enumerated rights that are the hallmark of due process in a criminal proceeding and which the defendant will be waiving, and provide information about the nature of the crimes charged and the associated penalties. Subdivision (2) of rule 11 (b) provides that the court "must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Although the selected requirements of rule 11 (b) referenced here are similar to those of Practice Book §§ 39-19 and 39-20, the petitioner's reliance is misplaced. *Rossillo* is clear that the court's obligation is predicated on first being informed that the defendant is using medication. See, e.g., *United States* v. *McPhatter*, 216 Fed. Appx. 55, 56, cert. denied, 551 U.S. 1109, 127 S. Ct. 2927, 168 L. Ed. 2d 255 (2007). While *Rossillo* does not control the application of §§ 39-19 and 39-20, we conclude that, even if it did, it would not apply to the present case because the court had no notice of any medication.

[10] Our decision today is driven by the facts of this case as viewed through existing precedent. It does not, however, foreclose the possibility that a situation could arise where a court would be required to inquire into medication use in order to promote the interests of justice and due process. See, e.g., *United States* v. *Rossillo*, 853 F.2d 1062, 1066–67 (2nd Cir. 1988).