******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE KYLLAN V.*
(AC 40437)

DiPentima, C. J., and Prescott and Norcott, Js.

*Syllabus*

The respondent father appealed to this court from the judgment of the trial
court terminating his parental rights with respect to to his minor child,
K. The petitioner, K's mother, sought to terminate the father's parental
rights, pursuant to statute (§ 45a-717 [g] [2] [B]), on the ground that K
had been denied, by reason of an act or acts of parental commission
or omission, the care, guidance or control necessary for K's physical,
educational, moral or emotional well-being. K was present in the home
when the father had assaulted one of his other children, M, although K
was in another room with her half-sister, P, at the time. This court
previously upheld the trial court's decision to terminate the father's
parental rights as to P and M. The trial court in the present case deter-
mined that K's exposure to the incident with M was the same as P's,
concluded that the adjudicatory issues were therefore the same and
had been fully and fairly litigated in P's case, and applied the doctrine
of collateral estoppel in determining that the petitioner had proven the
adjudicatory ground by clear and convincing evidence. The court then
determined that terminating the father's parental rights was in K's best
interest and rendered judgment terminating his parental rights, from
which he appealed to this court. *Held* that the trial court improperly
applied the doctrine of collateral estoppel in determining that the peti-
tioner had proven the adjudicatory ground by clear and convincing
evidence and, thus, a new trial was warranted: although a child's status
as a bystander to an act of abuse of a sibling can be sufficient for the
termination of parental rights as an act of commission or omission under
§ 45a-717 (g) (2) (B), the only basis for the trial court's finding in the
present case that K had been denied the care, guidance or control
necessary for K's physical, educational, moral or emotional well-being
as a result of the abuse of M was through collateral estoppel, but because
the issue of whether the father's abuse of M resulted in a denial to K
of care, guidance or control necessary for her physical, educational,
moral or emotional well-being was neither actually litigated nor neces-
sarily determined in the prior proceeding, and because the circum-
stances of the termination of the father's parental rights as to M and P
were separate and distinct from those as to K, collateral estoppel could
not apply to preclude the father from litigating whether his abuse of M
resulted in the denial of care, guidance or control necessary for K's
physical, educational, moral or emotional well-being; moreover, the peti-
tioner's attempt to marshal the facts found by the trial court in support
of her argument that the adjudicatory ground was proven without resort
to collateral estoppel was unavailing, as the trial court did not state a
basis for its finding that the denial of care, guidance or control was
established by clear and convincing evidence other than through collat-
eral estoppel, and it was not for this court to find facts.

Argued January 11—officially released February 27, 2018**

*Procedural History*

Petition by the mother of the minor child to terminate
the respondent father's parental rights with respect to
the child, brought to the Regional Probate Court for the
district of New London and transferred to the Superior
Court in the judicial district of New London, Juvenile
Matters at Waterford, and tried to the court, *Driscoll, J.*;
judgment terminating the respondent's parental rights,
from which the respondent appealed to this court.
*Reversed; new trial.*

*David J. Reich*, for the appellant (respondent).

*James P. Sexton*, with whom were *Megan L. Wade* and, on the brief, *Michael S. Taylor*, for the appellee (petitioner).

*Opinion*

NORCOTT, J. The respondent father appeals from the judgment of the trial court terminating his parental rights with respect to his biological daughter, K, pursuant to General Statutes § 45a-717 (g).[1] The respondent claims on appeal that the trial court improperly relied on the adjudicatory findings from a prior proceeding involving two of his other children to support the adjudicatory ground in the present case, namely, that because of a parental act of commission or omission, K was denied care, guidance, or control necessary for her physical, educational, moral, or emotional well-being as required by the statute. We agree with the respondent that the trial court improperly applied collateral estoppel in determining that K was denied the care, guidance, or control necessary for her physical, educational, moral, or emotional well-being as a result of the respondent's act of commission or omission. Accordingly, we reverse the judgment and remand the case for a new trial.

The following facts, which were found by the trial court in its memorandum of decision or are otherwise undisputed, and procedural history are pertinent to our decision. K was born to the petitioner mother and the respondent in 2001. Since shortly after K's birth, the petitioner and the respondent have been in almost constant litigation regarding custody, visitation, and support of K. During this time, the respondent has sought to exercise his parental rights, but the petitioner has opposed any contact between him and K.

On March 24, 2012, K was visiting the respondent along with two of her half-siblings, M and P.[2] On that day, the respondent assaulted M while P and K were in another room. On the basis of this assault, the respondent was arrested, convicted, and incarcerated. M and P's mother then filed petitions to terminate the respondent's parental rights as to the two children. *In re Payton V.*, 158 Conn. App. 154, 158, 118 A.3d 166, cert. denied, 317 Conn. 924, 118 A.3d 549 (2015). The court granted the petitions, concluding as to P that the adjudicatory ground of § 45a-717 (g) (2) (B) had been met because, as a result of the respondent's assault of M, which P heard, the respondent was arrested, convicted, and incarcerated, which resulted in the denial to the children of the respondent's financial and emotional support and guidance. Id. This court affirmed the termination of the respondent's parental rights as to M and P. Id., 167.

On June 16, 2015, six days after this court released its decision in *In re Payton V.*, the petitioner filed a petition in the Probate Court seeking to terminate the respondent's parental rights as to K pursuant to, inter alia, § 45a-717 (g) (2) (B). The case was then transferred to the Superior Court for Juvenile Matters. See General

Statutes § 45a-715 (g).

Before trial, the petitioner's counsel moved the court, in essence, to apply the doctrine of collateral estoppel to the adjudicative facts underlying *In re Payton V.*, specifically, that the respondent had committed an assault through a deliberate and nonaccidental act that resulted in serious bodily injury to another child of the respondent. See General Statutes § 45a-717 (g) (2) (F). The respondent's counsel objected on the basis that the prior proceeding was not applicable to K. The court then stated: "[T]o the extent that [the petitioner] has filed a claim that [K] has been denied care, guidance, control necessary, et cetera, by reason of acts of parental commission or omission by [the respondent], that issue was . . . fully litigated." The court clarified that the finding in *In re Payton V.* that M had been abused was limited to whether M or P had been denied care, guidance, or control by reason of an act of commission or omission by the respondent; see *In re Payton V.*, supra, 158 Conn. App. 158; not whether M suffered serious bodily injury. See id., 158 n.3. After that clarification, the court granted the motion. The trial then ensued.

In its memorandum of decision terminating the respondent's parental rights, the court noted: "[K] also was present at [the respondent's] home at the time of [the respondent's] assault of the child's half-brother, [M], and her exposure to the incident was the same as her half-sister, [P]." The court then found by clear and convincing evidence that the criteria for § 45a-717 (g) (2) (B) had been met because "[K] is in privity with [P], so the adjudicatory issues are the same," and applied collateral estoppel as to the entire adjudicatory ground. After then finding that termination of parental rights was in the best interests of K, the court terminated the respondent's parental rights. This appeal followed.

On appeal, the respondent claims that the trial court improperly relied on the adjudicatory findings from a prior proceeding involving two of his other children to support the same adjudicatory ground in the present case, namely, that because of a parental act of commission or omission, K was denied care, guidance, or control necessary for her physical, educational, moral, or emotional well-being as required by statute. Specifically, the respondent argues that collateral estoppel would be appropriate only to determine whether the act of commission or omission had occurred, not whether K was denied care, guidance, or control necessary for her physical, educational, moral, or emotional well-being. We agree with the respondent.

We begin with the applicable legal principles. Termination of parental rights is defined as "the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and the child's parent . . . ." General Statutes § 45a-707

(8). "It is, accordingly, a most serious and sensitive judicial action." (Internal quotation marks omitted.) *In re Jessica M.*, 217 Conn. 459, 464, 586 A.2d 597 (1991).

General Statutes § 45a-715 (a) (1) permits a child's parent to petition the Probate Court to terminate the parental rights of that child's other parent. In order to terminate a parent's parental rights under § 45a-717, the petitioner must prove by clear and convincing evidence at least one of the seven grounds for termination delineated in § 45a-717 (g) (2) and that termination is in the best interest of the child. General Statutes § 45a-717 (g) (1).

"A hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more grounds for termination of parental rights set forth in . . . § 45a-717 (g) (2) has been proven by clear and convincing evidence. If the trial court determines that at least one of the statutory grounds for termination has been proved, then it proceeds to the dispositional phase. . . . In the dispositional phase, there must be a showing by clear and convincing evidence whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Baciany R.*, 169 Conn. App. 212, 225–26, 150 A.3d 744 (2016).

"Clear and convincing proof is a demanding standard denot[ing] a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *Chief Disciplinary Counsel* v. *Rozbicki*, 326 Conn. 686, 701, 167 A.3d 351 (2017).

Ordinarily, we review the trial court's subordinate factual findings for clear error and its determination that a ground for termination of parental rights has been proven for evidentiary sufficiency; *In re Egypt E.*, 327 Conn. 506, 525–26, 175 A.3d 21 (2018); however, "[a]pplication of the doctrine of collateral estoppel is a question of law over which we exercise plenary review." *Lighthouse Landings, Inc.*, v. *Connecticut Light & Power Co.*, 300 Conn. 325, 345, 15 A.3d 601 (2011).

"[C]ollateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . Furthermore, [t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be

identical to those considered in the prior proceeding." (Citations omitted; internal quotation marks omitted.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 812, 695 A.2d 1010 (1997).

"The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel means simply that when *an issue of ultimate fact* has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment. . . . Collateral estoppel express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Emphasis added; internal quotation marks omitted.) *In re Jah'za G.*, 141 Conn. App. 15, 26, 60 A.3d 392, cert. denied 308 Conn. 926, 64 A.3d 329 (2013). "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Cadle Co.* v. *Gabel*, 69 Conn. App. 279, 294, 794 A.2d 1029 (2002).

Section 45a-717 (g) (2) (B) specifies certain actions that constitute prima facie evidence of an act of commission or omission, including sexual molestation and exploitation, severe physical abuse, or a pattern of abuse. The statute, however, does not limit acts of commission or omission to just these three types of acts. Recently, our Supreme Court noted the variety of cases in which this court has affirmed the termination of parental rights based on either § 45a-717 (g) (2) (B) or the corresponding statute for proceedings initiated by the Commissioner of Children and Families, General Statutes § 17a-112 (j) (3) (C). *In re Egypt E.*, supra, 327 Conn. 529–30. In listing cases that "demonstrate the statute's wide applicability"; id., 529; our Supreme Court cited specifically to *In re Payton V.*, as support that "abusing a sibling in a child's presence or within earshot" can constitute an act of commission or omission under either of the applicable statutes. Id., 530. The court then noted that "[i]n all of the foregoing cases [including *In re Payton V.*], the children at issue suffered physical, emotional, and/or psychological harm as a result of their parents' various acts of commission or omission." Id.

Thus, it is beyond dispute that status as a bystander to an act of abuse of a sibling is grounds for termination as an act of commission or omission under § 45a-717 (g) (2) (B). The respondent does not dispute this notion

nor that his abuse of M while K was in the same room as P could meet this criteria; he argues, however, that for the adjudicatory ground to be met, the petitioner must also "show that, *as a result* of the parental acts of commission or omission, the care, guidance, or control necessary for the child's well-being has been denied." (Emphasis altered; internal quotation marks omitted.) *In re Egypt E.*, supra, 327 Conn. 527.

In the present case, the only basis from which the trial court found the denial of the care, guidance, or control necessary for K's physical, educational, moral, or emotional well-being as a result of the abuse of M was through collateral estoppel. For collateral estoppel to apply to this finding via *In re Payton V.*, however, the issue must have been actually litigated and necessarily determined *as it pertains to K*. Neither happened here. When the trial court rendered judgment terminating the respondent's parental rights as to M and P, it was neither determined nor necessary to determine whether the respondent's abuse of M resulted in the denial to K of care, guidance, or control necessary for her physical, educational, moral, or emotional well-being. Because the circumstances of the termination of the respondent's parental rights as to M and P are separate and distinct from those as to K, collateral estoppel cannot apply to preclude the respondent from litigating whether his abuse of M resulted in the denial of care, guidance, or control necessary for K's physical, educational, moral, or emotional well-being.[3]

In the alternative, the petitioner attempts to marshal the facts as found by the trial court to argue that the denial of care, guidance, or control necessary for K's physical, educational, moral, or emotional well-being is apparent without resort to collateral estoppel. The trial court, however, did not state a basis for its finding that the denial of care, guidance, or control was established by clear and convincing evidence other than through collateral estoppel. To determine whether there is sufficient evidence to terminate the respondent's parental rights as to K, there must be subordinate factual findings. *In re Egypt E.*, supra, 327 Conn. 525–26. "It is well settled that we do not find facts." (Internal quotation marks omitted.) *Kearse* v. *Taylor*, 165 Conn. App. 780, 791, 140 A.3d 389 (2016). Because we will not usurp the role of the fact finder, we leave it to the trial court to determine on remand if there is sufficient evidence to prove the adjudicatory ground.

Likewise, we find the petitioner's argument that *In re Payton V.* is binding on this court in determining whether the adjudicatory ground in this case has been met unpersuasive. We apply precedent to facts. See, e.g., *Green* v. *Commissioner of Correction*, 172 Conn. App. 585, 599, 160 A.3d 1068, cert. denied, 326 Conn. 907, 163 A.3d 1206 (2017). There was no finding as to whether K has been denied the care, guidance, or con-

trol necessary for her physical, educational, moral, or emotional well-being other than through collateral estoppel, and that finding is not in accord with the law. We will not use precedent to make findings that the trial court did not. Such a holding would undermine and circumvent our collateral estoppel jurisprudence.

Because we hold that collateral estoppel was improperly applied and there were no other factual findings to support that the respondent denied K the care, guidance, or control necessary for her physical, educational, moral, or emotional well-being as required by § 45a-717 (g) (2) (B), the court improperly reached the dispositional phase to determine the best interests of the child. *In re Valerie D.*, 223 Conn. 492, 511, 613 A.2d 748 (1992) ("[o]ur statutes and case law make it crystal clear that the determination of the child's best interests comes into play only *after* statutory grounds for termination of parental rights have been established by clear and convincing evidence" [emphasis in original]).[4]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** February 27, 2018, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 45a-717 (g) provides in relevant part: "At the adjourned hearing or at the initial hearing where no investigation and report has been requested, the court may approve a petition terminating the parental rights . . . if it finds, upon clear and convincing evidence, that (1) the termination is in the best interest of the child, and (2) . . . (B) the child has been denied, by reason of an act or acts of parental commission or omission . . . the care, guidance or control necessary for the child's physical, educational, moral or emotional well-being. . . ."

[2] M and P share the same mother, who is different from K's mother, the petitioner in this case. The respondent is the father of all three children.

[3] Although the trial court found that K and P are "in privity" with each other, we note that the use of this term in this context is inapposite because privity only concerns the party against whom collateral estoppel is claimed and because the respondent's parental rights as to K and P are separate and distinct. "While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party *against whom collateral estoppel . . . is being asserted* have been adequately represented because of *his* purported privity with a party at the initial proceeding." (Emphasis added; internal quotation marks omitted.) *Mazzioti* v. *Allstate Ins. Co.*, supra, 240 Conn. 813. Likewise, "[a] key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." (Internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 304, 596 A.2d 414 (1991).

[4] Because we determine that a new trial is necessary, we do not address whether this court's holding in *In re Carla C.*, 167 Conn. App. 248, 262, 143 A.3d 677 (2016), which pertained to the ground of no ongoing parent-child relationship pursuant to § 45a-717 (g) (2) (C), should be extended to include whether a parent who may be partially responsible for the denial of care, guidance, or control necessary for the child's physical, educational, moral, or emotional well-being by the other parent can then seek termination of parental rights on that ground.